[Crim. No. 5857.  Second Dist., Div. Two.  Dec. 16, 1958.]

THE PEOPLE, Respondent, v. GEORGE ROLLAND KENNELLY, Appellant.

Ernest L. Graves, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, and Preble Stolz, Deputy Attorney General, for Respondent.

FOX, P. J.—After a jury trial defendant was convicted of robbery. He has appealed from the order denying his motion for a new trial and from the judgment.

The circumstances giving rise to defendant's prosecution are: At approximately 4 a.m. on July 22, 1956, a car drove into a Long Beach service station and while the attendant, Baxter Hamilton, was checking the water in the radiator, he felt something brush his back and, when he turned around, the driver said, "This is a stick up." Hamilton testified that the driver had something that appeared to be a gun concealed

except for an inch or so of the barrel that protruded from under his jacket. The attendant was ordered to open the cash drawer at the pump island and to place the money in a leather money bag furnished by the robber. Another 10 dollar bill was obtained from the office of the station. Hamilton was able to describe the car as either a 1947 or 1948 black Ford sedan with out-of-state license plates (dark numbers on light background). He also noticed a dent in the left front fender near the chrome strip, and a rough V-shaped weld immediately behind the headlight. The driver had a hat on, but it was observed that he had red hair, wore an army fatigue jacket and denim pants.

On July 29, 1956, Officer Thomas of the Long Beach Police Department, noticed an illegally parked car. The car had California license plates wired over Nevada plates. An examination of the glove compartment revealed a leather money bag and several replicas of guns. The front fender was dented as described by the service station attendant. There was no owner registration on the steering column but a slip of paper found in the glove compartment contained the address of a nearby apartment. Thomas, with additional officers, went to the apartment, at which time they found the defendant and one Carol Wilson, who said she owned the car. On the back of a chair in the dining room was a fatigue jacket.

Subsequently, in a police lineup, Hamilton identified the defendant as the man who robbed him, and identified the Ford as the car which was used in the robbery. Hamilton also testified that the leather money bag, the fatigue jacket, and the replica of the gun were similar to those he had seen at the time of the robbery.

Defendant's defense was an alibi, which was supported by Carol Wilson, who testified that they were together at the time of the crime.

As grounds for reversal, defendant complains of the giving of certain instructions, that the trial court erred in admitting certain evidence, and that the defendant was improperly cross-examined.

The defendant objects to the instructions given on reasonable doubt and the presumption of innocence. The jury was instructed as follows:

"A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled

to an acquittal, but the effect of this presumption is only to place upon the state the burden of proving him guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.'' (CALJIC 21, Pen. Code, § 1096.)

''The law does not require demonstration or that degree of proof which, excluding all possibility of error, produces absolute certainty, for such degree of proof is rarely possible. Only that degree of proof is necessary which convinces the mind and directs and satisfies the conscience of those who are bound to act conscientiously upon it.'' (CALJIC 22.)

■ The defendant does not question the propriety of giving CALJIC 21, which is in the language of Penal Code, section 1096. He contends, however, that error was committed by giving CALJIC 22, which is the second paragraph above quoted; for, argues defendant, the giving of this instruction modified CALJIC 21 in such a way as to lessen the standard of proof provided for in Penal Code, section 1096. This argument is not well taken. The precise instruction here under attack was approved in *People* v. *Eggers*, 30 Cal.2d 676, 688 [185 P.2d 1], and by this court in *People* v. *Derenzo*, 46 Cal. App.2d 411, 416 [115 P.2d 858]. Defendant attempts to distinguish and show the inapplicability of the Eggers case by suggesting that the court in that case did not have before it the question of whether CALJIC 22 curtailed, diminished, restricted, or contracted the quantum of proof required by section 1096 of the Penal Code, but only whether the use of the word ''conscience'' had the effect of instructing the jury to ''let your conscience be your guide.'' The instant case and the Eggers case are not distinguishable. In both cases, the primary issue concerns the preservation of the protective principles stated in section 1096 of the Penal Code. The Eggers case held that the giving of what is now CALJIC 22 did not alter the reasonable doubt rule, as is evidenced by the following statement (p. 688) : ''In the present case reasonable doubt was defined in the language of section 1096 of the Penal Code. The challenged instruction refers to a degree of proof 'which convinces the mind and directs and satisfies the

conscience.' By the two instructions, read together, the jurors were told that each of them must satisfy his conscience as to the guilt of Eggers and be convinced, beyond a reasonable doubt, as to his guilt." The language is fully applicable to the case at bar.

■ The next instruction complained of reads as follows: "Evidence, if any, that the [a] defendant, on one or more occasions other than from the witness stand, made false, contradictory or misleading statements concerning the charge against him which now is being tried [or that he endeavored to procure false or fabricated evidence to be produced at the trial] may be considered by the jury as a circumstance tending to prove a consciousness of guilt, but is not sufficient of itself to prove guilt. The weight to be given to such a circumstance, and the significance, if any, to be attached to it, are matters for the jury to determine."

The specific objection is that that portion of the instruction which is within the brackets had no application to the case and the giving of the full instruction "was like pointing a judicial finger at" the defense witness. It is conceded by the State that there is nothing in the record which shows an attempt to procure false or fabricated evidence. ■ It is error to charge the jury on abstract principles of law not applicable to the issues in the case. (*People* v. *Jackson,* 42 Cal.2d 540, 546 [268 P.2d 6].) However, the giving of such an instruction does not justify a reversal unless prejudice is affirmatively shown. (*People* v. *Eggers, supra, People* v. *Gardner,* 128 Cal.App.2d 1, 8 [274 P.2d 908].) ■ In the instant case, considering the identification of defendant by the victim, the witness' detailed description of the car which was registered to defendant's girl friend, the similarity in appearance of the money bag found in the glove compartment of the car to that furnished the victim by the robber, and the like similarity of the fatigue jacket found in the defendant's apartment to the one worn by the robber, it is clear defendant suffered no prejudice. Accordingly, the error in giving the challenged portion of the instruction cannot justify a reversal of the judgment.

■ Defendant contends that the court prejudicially erred in admitting in evidence the signed statement of his girl friend, Carol Wilson, after she had admitted on the stand that she had previously made a statement to the police inconsistent with her testimony as to the time she and defendant had arrived in Long Beach on the morning of the robbery.

Since the witness admitted the inconsistency it was not proper to further explore the subject by introducing in evidence her signed statement. (*People* v. *Sykes,* 44 Cal.2d 166, 172 [280 P.2d 769].) But such statement only amounted to a repetition of her inconsistency and does not appear to have been prejudicial. Certainly no showing is made which would justify a reversal.

Defendant's final contention is that he was subjected to improper cross-examination by the prosecutor. During the course of cross-examining the defendant, the prosecutor sought to impeach him by use of a stenographic transcript of a police interrogation of defendant. As to many of the questions, the defendant had answered "no comment." No objection was made to this line of questioning for quite some time. Finally, however, counsel for the defense objected that this was improper impeachment. He then made a motion to strike all such questions and answers. The motion was denied since the questions were answered "without any objection having been made." In the premises it was not an abuse of discretion to deny the motion.

In any event it is difficult to see how these answers could be considered prejudicial to defendant. His theory is that the "no comment" answers were not admissible as admissions because they admitted nothing, and, for the same reason, they could not impeach his direct testimony. Accordingly, the testimony was valueless, and its admission no more than a waste of time.

Defendant had a fair trial. The record does not indicate that the cumulative effect of the errors "has resulted in a miscarriage of justice." Hence the judgment cannot be reversed. (Cal. Const., art. VI, § 4½.)

The judgment and order are affirmed.

Ashburn, J., and Herndon, J., concurred.