[Crim. No. 496. Fifth Dist. Sept. 12, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. MILTON
PETERS, Defendant and Appellant.

John R. Nixon for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and James T. McNally, Deputy Attorneys General, for Plaintiff and Respondent.

DAVID, J. pro tem.*—Milton Peters was charged by an information with the crime of pimping for Sandra McClenden, a prostitute (Pen. Code, § 266h). He also was charged with and admitted three prior felony convictions. A jury found him guilty as charged. His motion for a new trial was denied; probation was denied; and he was sentenced to state prison.

He appealed from the judgment, contending:

(1) That testimony of Sandra McClenden, at his preliminary hearing, was read at the trial in violation of his right under the Sixth Amendment to the United States Constitution to confront the witness against him at the time of trial, and to have the trier of fact observe the demeanor of the witness;

(2) Evidence of the crime of pimping given against him by another prostitute, Alice Turner, was improperly received; and

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

(3) Evidence given by a police officer that he had seen Peters with a third prostitute was improperly received; and that these were prejudicial errors requiring reversal of the judgment.

After careful consideration of the record and the law, we cannot agree. The judgment is affirmed.

■ Sandra McClenden, who gave her testimony against Peters at the preliminary hearing, was at that time a ward of the Youth Authority of the State of California. She was 17½ years old, with a record of prostitution going back to her 13th year. At the time of the preliminary hearing, she was in custody in juvenile hall as a parole violator.

The appellant Peters, was represented by present counsel and an associate at the preliminary hearing. His counsel had a complete opportunity to cross-examine Miss McClenden and went to some lengths to discredit her testimony. In this, she was not cooperative. The court labored to keep the examination within bounds, and appellant has no proper complaint against the rulings made in that regard.

The preliminary examination took place in Fresno on July 11, 1967. Shortly thereafter, Miss McClenden was released and placed in the custody of her mother, but, on August 27, 1967, she was arrested again on the charge of soliciting an act of prostitution. Thereupon, on September 12, 1967, she was returned to juvenile hall, under the control of Mrs. Francis Reed, parole officer for the California Youth Authority.

The Youth Authority then designated a Mrs. McGrew, in Sacramento, California, as a foster mother to have the care of Sandra. She arrived in Sacramento by bus on September 12, 1967, and an employee of the Youth Authority conducted her to the foster home. On the following day, Sandra received permission from Mrs. McGrew to go to the bus depot to pick up her luggage, there having been some confusion concerning it the day before. Sandra McClenden thereupon disappeared.

Some delay was occasioned by the administrative steps necessary to secure consent of the Youth Authority for the issuance of a warrant for her arrest, which was given on September 22, 1967. Thereupon, the Department of Criminal Identification and Investigation in Sacramento was so apprised, and duly noted the issuance of the warrant in Sandra McClenden's record; the Fresno police were notified that the warrant had been issued, and they maintained constant surveillance in Fresno in an effort to locate her. Upon reports that Sandra had been seen in San Francisco, the parole officer,

Mrs. Reed, advised the San Francisco Youth Authority representatives, but Sandra was not found there, though the police were detailed to attempt an arrest at that time.

A known prostitute in Fresno informed an investigator for the Fresno district attorney's office that Sandra was then in Bakersfield. Mr. Kit Nelson, District Attorney of Kern County, was called and asked to cooperate to see if she could be located there, and to learn whether she had been arrested for any offenses or if the police there had any information as to her whereabouts.

The time set for trial of Peters approaching, Officer Kennedy of the vice detail of the Fresno Police Department and Amil Demes, an investigator with the district attorney's office, attempted to locate and serve a subpoena upon Miss McClenden, all without success.

Appropriate proceedings were had at the time of trial of Peters to determine whether or not the testimony given at the preliminary hearing by Sandra McClenden could be read, in her absence.

After reciting the steps that had been taken to locate the missing witness, the district attorney then stated: "All these efforts are still fruitless. Sandra is still missing and not available to testify and it's my statement to the Court that were these various people here to testify to the matters which I have just recited, the testimony they would give would be substantially as I have given." He stated further that the search was continuing right down to that time.

Following this representation, Mr. Nixon, defense counsel, stated: "Your Honor, at this time, without admitting that due diligence has been used in any way, I will stipulate to the following. I'll make the following statement, taking the District Attorney's word that he has personal knowledge of the facts of which these witnesses would testify to, and on that basis I'll stipulate that if they were called, that they would so testify. However, I am in no way stipulating that the matters which they would testify to are true and factual." The district attorney then accepted that stipulation, following which the court stated: "Very well. The stipulation having been accepted, the Court will find that due diligence has been used in an effort to locate and have this witness available."

By stipulation, some of the extraneous portions of the record were then eliminated from the preliminary hearing transcript; and, as so edited, the transcript of Sandra's testimony was read to the jury.

At oral argument before this court, Mr. Nixon (who, with his associate appeared for Peters at the preliminary hearing, and who represented him at the trial) stated in substance: "There was no lack of diligence after Sandra flew the coop. Lack of diligence was before." His postulate then, as at the trial, was that the authorities had been negligent in letting her get away, that she ought to have been held in custody until the time of trial, and that, because she was not, her testimony should not have been received. Pressed to furnish any authority for such a position, he was not prepared to submit any to this court, and we have found none.

We are satisfied that the constitutional rights of appellant Peters were not violated.

The United States Supreme Court has held that the Sixth Amendment to the United States Constitution applies to the states, and that in a criminal trial the defendant is entitled to be confronted by the witness against him. (*Pointer* v. *Texas,* 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065]; *Douglas* v. *Alabama,* 380 U.S. 415, 418-419 [13 L.Ed.2d 934, 937-938, 85 S.Ct. 1074].) The right of confrontation was held not to have been afforded in those cases. Hence, the use of testimony given prior to the time of trial, where there had not been the opportunity for adequate cross-examination, was prejudicial error. In *Pointer* v. *Texas, supra,* 380 U.S. 400, 407 [13 L.Ed.2d 923, 928, 85 S.Ct. 1065], the court stated in part: "The case before us would be quite a different one had Phillips' statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who have been given a complete and adequate opportunity to cross-examine." In *Douglas* v. *Alabama, supra,* 380 U.S. 415, 418 [13 L.Ed.2d 934, 937, 85 S.Ct 1074], that court said: "We decide today that the Confrontation Clause of the Sixth Amendment is applicable to the States. *Pointer* v. *Texas,* 380 U.S. 400, 85 S.Ct. 1065. Our cases construing the clause hold that a primary interest secured by it is the right of cross-examination; an adequate opportunity for cross-examination may satisfy the clause even in the absence of physical confrontation."

California Penal Code section 686, as applicable to this case, reads in part as follows:

"In a criminal action, the defendant is entitled:

" . . . . . . . . . . . .

"3. To produce witnesses on his behalf and to be confronted with the witnesses against him, in the presence of the court, except that:

"(a) Hearsay evidence may be admitted to the extent that it is otherwise admissible in a criminal action under the law of this state.

"(b) The deposition of a witness taken in the action may be read to the extent that it is otherwise admissible under the law of this state."

Prior to its amendment in 1965, to coordinate it with the new Evidence Code, the section provided specifically for use of testimony taken at the preliminary hearing of a witness who, with due diligence, cannot be found within the state.

In the portion of Evidence Code section 240 applicable here, the phrase "unavailable as a witness" is defined as follows:

"(a) Except as otherwise provided in subdivision (b), 'unavailable as a witness' means that the declarant is:

"(4) Absent from the hearing and the court is unable to compel his attendance by its process; or

"(5) Absent from the hearing and the proponent of his statement has exercised reasonable diligence but has been unable to procure his attendance by the court's process.

"(b) A declarant is not unavailable as a witness if the exemption, preclusion, disqualification, death, inability, or absence of the declarant was brought about by the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the declarant from attending or testifying."

As noted above, the record shows that appellant's retained counsel representing him at the trial (and on this appeal) was his chief counsel at the preliminary hearing, and that both he and his co-counsel extensively cross-examined Miss McClenden at that hearing. That such cross-examination was unproductive, from the standpoint of appellant, does not make the right constitutionally inadequate. It was sufficient to show the hostile attitude of the witness toward Peters.

The California Supreme Court, in *People* v. *Pike,* 71 Cal.2d 595, 609 [78 Cal.Rptr. 672, 455 P.2d 776], states that *Barber* v. *Page,* 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318] and *Berger* v. *California,* 393 U.S. 314 [21 L.Ed.2d 508, 89 S.Ct. 540], require that the state make a good faith effort to secure the witness' presence before introducing at a trial the transcript of evidence given by the witness at a prior hearing when the witness is not available or is not produced at the present hearing. ". . . It does not appear that *Barber* accorded to defendant in this case any greater rights than he had under the applicable California statute."

In *People* v. *Green,* 70 Cal.2d 654, at page 664 [75 Cal.Rptr. 782, 451 P.2d 422], the Supreme Court had this to say: ". . . Although we recognize that some of the same practical difficulties exist, nothing we say here is intended to affect or cast doubt upon the viability or constitutionality of the long-established 'prior testimony' exception to the hearsay rule. (Evid. Code, §§ 1290-1292.) This exception, as *Barber* points out, adds the factor of necessity to the constitutional aspect of confrontation—which factor may, in appropriate cases, outweigh the lack of contemporary cross-examination." In footnotes following this statement (70 Cal.2d 654, 664, fn. 10), the court continues: ". . . Although preliminary hearing testimony was clearly contemplated by section 1291 (see comments thereto), the Supreme Court in *Pointer* v. *Texas* and *Barber* v. *Page* left open the question whether such prior testimony satisfies the confrontation clause of the Constitution, and we have no occasion to consider that question at this time. (But see *People* v. *King* (1969) supra, 269 Cal.App.2d 40, 47 [74 Cal.Rptr. 679].)' "

In *People* v. *King,* 269 Cal.App.2d 40, 42 [74 Cal.Rptr. 679], the court states: "The sole issue which counsel raises in this appeal is whether it was error to permit the reading at the trial of the testimony of the robbery victim given at the preliminary hearing, the victim then being confined to a hospital due to a cerebral thrombosis, incapacitated from speaking, and unable to be transported to the court to testify. Furthermore, the prognosis was that the witness would not recover his speech facility for another eight-week period. We have concluded that there was no error and that the judgment should be affirmed." That court further stated [269 Cal.App.2d 40, at pages 47-48]: "Defense counsel is also on notice at the preliminary hearing that a reporter's transcript of that hearing can be used against the defendant at the trial if the witness then testifying becomes unavailable. In permitting the transcript of the absent witness Freeman to be read at the trial, the trial court found the interest and motive of the cross-examination of Freeman at the preliminary hearing to be similar to that which the defense counsel would have had if Freeman had testified at the trial. (Evid. Code, § 402, subd. (c).) The statute requires only that the interest and motive be similar, not identical. We find no abuse of discretion or error in the trial court's finding in this regard."

Again, in another footnote in *People* v. *Green, supra,* 70 Cal.2d 654, 665 (fn. 11), the Supreme Court quotes from *People* v. *Vinson,* 268. Cal.App.2d 672, 677 [74 Cal.Rptr. 340], a decision of this court, which distinguishes between the use of former hearsay testimony when the witness is unavailable, the hearsay is reasonably reliable, and is presented to the jury in good faith and is the only evidence available, and the use of such previous testimony when the witness is in court, and able to testify before the very forum that is going to pass judgment upon a defendant who is on trial for his life or freedom. ''In the latter situation the hearsay is no longer reliable, and it is not the only evidence available.''

In considering the necessity to use the transcript of testimony at the preliminary hearing, the unavailability of the witness is one criterion; but another is the constitutional and statutory imperative to bring the case to trial speedily. If the case is dismissed, the unavailability of the witness may thereafter be compounded by the unavailability of the defendant (Pen. Code, § 1382, subd. 2), and the criminal may go unpunished.

We are satisfied that the witness was unavailable; that a good faith effort was made, with reasonable diligence, to procure her attendance, which was complicated by her own status as a fugitive from the Youth Authority; that the use of the testimony given at the preliminary hearing at the trial was necessary; and that no miscarriage of justice was occasioned thereby. There is no evidence that Miss Sandra McClenden's absence was brought about by the People for the purpose of preventing her from attending or testifying at the trial of appellant Peters.

The escape of Sandra from her foster home was not chargeable to the prosecuting authorities. This was not comparable with an escape from jail, where the witness was held without bail, but negligently was allowed to depart, as in *Motes* v. *United States,* 178 U.S. 458 [44 L.Ed. 1150, 20 S.Ct. 993]. Indeed, appellant has neither urged the applicability of its unique holding, nor produced other authority.

Whether due diligence has been shown is a factual question to be determined according to the circumstances of each case. (*People* v. *Banks,* 242 Cal.App.2d 373, 376 [51 Cal.Rptr. 398], decision by this court. Hearing by Supreme Court denied.) Unless there has been an abuse of discretion, the ruling of the trial judge will not be disturbed. (*People* v. *Volk,* 221 Cal.App.2d 291, 294 [34 Cal.Rptr. 351]; *People* v.

*Gardner,* 192 Cal.App.2d 357, 366-367 [13 Cal.Rptr. 477].) There was no abuse of discretion here.

 Over the appellant's objection, the prosecution produced Alice Turner as a witness. She testified that she worked for Peters as a prostitute; that in March 1967 she lived in his home, and that Peters brought Sandra McClenden to his home; that the appellant Peters and Miss McClenden had their arms full of women's clothes, which were taken into the appellant's bedroom, which previously Turner had shared; that Alice Turner was pregnant at the time; that she asked appellant why he brought Miss McClenden to the home, and he told her, "You too big to work now, and I have got to have money." She related details of her relationship with Peters and the fact that she gave him the money she earned as a prostitute; that, in return, he gave her one or two dollars a day and provided her with a home, food and clothing. This testimony of Miss Turner directly linked Peters with Sandra McClenden; though in so doing, it revealed another crime of pimping, it is also admissible for the purpose of showing plan, scheme, design, intent, motive or *modus operandi* within the rules of such cases as *People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924]; *People* v. *Haston,* 69 Cal.2d 233 [70 Cal.Rptr. 419, 444 P.2d 91]; *People* v. *Cramer,* 67 Cal.2d 126 [60 Cal.Rptr. 230, 429 P.2d 582]; and *People* v. *Kelley,* 66 Cal.2d 232 [57 Cal. Rptr. 363, 424 P.2d 947]. At the trial, the appellant Peters conceded the evidence was admissible for that purpose, providing a limiting instruction was given; and it was. (CALJIC No. 33.) Appellant's argument is that the testimony should have been excluded assertedly because its prejudicial effect outweighed its probative value; but prejudice alone does not render such evidence inadmissible. The test, as stated in *People* v. *Cramer, supra,* 67 Cal.2d 126, at page 132, is whether ". . . the other offenses offered to prove pattern, scheme or plan are sufficiently similar and possess a sufficiently high degree of common features with the act charged where they warrant the inference that if the defendant committed the other acts he committed the act charged."

In this case the crime is identical, pimping; rather than being remote it was contemporaneous in point of time; in each instance, Peters received the prostitute in his home where he and she lived; each gave him her earnings and, in return, he provided each with pocket money and the necessities of life.

 Appellant briefly makes an argument, unsupported by authority, that it was highly prejudicial to permit Officer

Pimentel to testify that he had seen the appellant with a known prostitute, Eddie Lee Martin, numerous times at appellant's home and at a drive-in. The officer testified that he knew Miss Martin; that he had arrested her for the crime of prostitution on two occasions; and that he had seen Miss Martin with Peters at the latter's home and at the Triangle Drive-In.

Prior to the testimony of Officer Pimentel to which objection is now made, Miss McClenden's testimony at the preliminary hearing, which was read at the trial, was that the appellant Peters owned the drive-in; that Eddie Lee worked there as a prostitute; that after returning to Fresno from San Francisco where she had worked as a prostitute, Miss McClenden went to Peters' home to obtain her clothing and the clothes were in "Eddie Lee's bedroom."

Alice Turner further testified that while she worked as a prostitute she lived in the appellant Peters' house with the appellant and Eddie Lee Martin. On cross-examination, the defense brought out that Eddie Lee Martin and one Shirley Hill worked for the appellant at the time Miss Turner worked for him, and that Eddie Lee Martin lived in his home.

Peters took the stand in his own behalf and stated that a 1967 Cadillac he drove was owned by Eddie Lee Martin. Another defense witness, Jim Davis, testified that he visited Peters at least once a week; that he had stayed overnight on one occasion and Eddie Lee Martin and Alice Turner were there. Another defense witness, Carl Peters, testified that he worked at the Triangle Drive-In for Eddie Lee Martin.

Thus, the appellant Peters' relationship with Eddie Lee Martin, a prostitute, was established by the testimony of prosecution and defense witnesses alike, and it is not reasonable to say that the brief testimony of Officer Pimentel, only one of these many witnesses, worked prejudicial error in establishing such a connection. Such testimony falls within the scope of the cases cited above, and Evidence Code section 1101, subdivision (b).

The judgment is affirmed.

Stone, P. J., and Gargano, J., concurred.

A petition for a rehearing was denied October 10, 1969, and appellant's petition for a hearing by the Supreme Court was denied November 5, 1969.