[Crim. No. 7693. First Dist., Div. One. Jan. 21, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
DOUGLAS BENJAMIN, Defendant and Appellant.

## COUNSEL

Boyd E. Burnison, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Joyce F. Nedde, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOLINARI, P. J.**—Defendant appeals from a judgment of conviction, following a jury trial, of robbery in the second degree (Pen. Code, § 211). The chief contention on appeal is that the trial court improperly admitted the preliminary hearing testimony of one Arlgene Guthrie, who was not present at trial, which testimony was the only evidence connecting defendant to the crime and relied upon for conviction. Additional error is attributed to the trial court's manner of instructing the jury how a deter-

mination of guilt beyond a reasonable doubt should be made and for certain comments directed to defendant's requested instructions concerning opinion testimony of a lay witness.

The pertinent facts adduced at the trial with respect to the alleged robbery disclose that on May 9, 1968,[1] Joseph H. Tyman was knocked to the ground on the premises of a "Doggie Diner" in Oakland by several persons, and that, following the scuffle, Tyman discovered that his wallet containing credit cards, a driver's license and between eight and thirteen dollars was missing. Following the robbery Guthrie, who had witnessed the robbery, gave the police a description of the robber. Based on this description the police arrested defendant approximately 15 minutes later. Defendant was brought to the presence of Guthrie who identified him as the person he had seen remove Tyman's wallet. Neither the wallet nor any of its contents were found on defendant's person when he was arrested.

At the trial, which commenced on August 6, it was represented to the court by the People that Guthrie was not available as a witness. Following a *voir dire* hearing on the issue of Guthrie's availability as a witness, the trial court admitted into evidence the testimony given by Guthrie at the preliminary hearing which was held on May 23. At the preliminary hearing Guthrie testified that on May 9 he was a patron at the aforementioned Doggie Diner; that he heard a scuffle and then observed Tyman on the floor; that he saw defendant standing over Tyman, and that he saw defendant slip a wallet from Tyman's inside coat pocket into his own right coat pocket. Guthrie also testified that he helped Tyman to get up and that, after a passing police car was flagged down, he and Tyman narrated to the police officer what had happened.

At the preliminary hearing Guthrie also testified that he was a member of the United States Marine Corps, stationed at Treasure Island in San Francisco, and that his final tour of duty prior to his discharge in October 1968 was to be in Vietnam. He stated he did not know the exact date he would be sent to Vietnam, but he did know that it would be soon. He stated that he was going to be stationed at Da Nang and gave his Vietnam APO address.

Defendant was the only defense witness. He testified that he was at the Doggie Diner at the time of the alleged robbery; that he had observed Tyman scuffling with two men and a woman, but that he did not see anyone take Tyman's wallet. He denied that he took the wallet and further stated that it would have been impossible for him to do so because of his crippled hand.

---

[1]Unless otherwise indicated, all dates have reference to the year 1968.

At trial, the prosecution in a *voir dire* hearing presented the testimony of an Inspector Shelley who on July 30 had been assigned the task of locating Guthrie. Shelley testified that on July 31 he called the Marine Corps legal officer at Treasure Island concerning the whereabouts of Guthrie and was informed by the chief clerk for the legal officer, on or about August 1, that Guthrie had been sent to Vietnam in June and would be unavailable for the trial. The advice that Guthrie had departed for Vietnam on June 16 was confirmed in a letter from the legal officer to Shelley received on the morning of the first day of trial. On the same day Shelley again telephoned the legal officer's chief clerk to ascertain if there were any military procedures available whereby Guthrie might be returned from Vietnam. At this point the testimony digressed to other matters and the record is silent as to what reply the inspector received. Following this testimony, defendant offered to prove, by calling the prosecutor assigned to the case, that the People had not used due diligence in attempting to produce Guthrie as a witness on the basis that the prosecutor had known for a considerable period of time that Guthrie might not be available and that he had made no effort to make him available as a witness. This offer was denied by the court. The trial judge announced, however, that he would take judicial notice that Guthrie was not available as a witness because of his military duties.

The record discloses, further, that on July 5 the cause had been set for trial for July 29, that the cause was apparently continued to July 31 on which date an amended information was filed to which defendant pleaded not guilty and that, by consent, the cause was continued to August 5 for trial. A peremptory challenge was interposed on August 5 to the judge assigned to the case and the cause was thereupon transferred to another department where it came on for trial on August 6.

Defendant contends, essentially, that the admission of Guthrie's testimony at the preliminary hearing denied him his Sixth Amendment right of confrontation. ▮ In *Barber* v. *Page,* 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318], made fully retroactive in *Berger* v. *California,* 393 U.S. 314 [21 L.Ed.2d 508, 89 S.Ct. 540], it was held that a state must make a good faith effort to secure a witness' presence before introducing at a trial the transcript of evidence given by a witness at a prior hearing when the witness is not available or is not produced at the present hearing. (Pp. 724-725 [20 L.Ed.2d pp. 259-260]; see *People* v. *Pike,* 71 Cal.2d 595, 608-609 [78 Cal.Rptr. 672, 455 P.2d 776].) The rationale underlying *Barber* is that the right of confrontation is basically a trial right which includes both the right of cross-examination and the occasion for the jury

to weigh the demeanor of the witness. (Pp. 725-726 [20 L.Ed.2d pp. 260-261].) With respect to the right of cross-examination *Barber* placed strong stress upon the importance of ensuring the defendant's right to conduct his cross-examination before a contemporaneous trier of fact, and recognized that there is a substantial difference in the nature and purpose of the preliminary hearing and trial proceedings, regardless of whether there has been cross-examination. (P. 725 [20 L.Ed.2d p. 260]; see *People* v. *Johnson,* 68 Cal.2d 646, 659, 661 [68 Cal.Rptr. 599, 441 P.2d 111]; *People* v. *Green,* 70 Cal.2d 654, 660-663 [75 Cal.Rptr. 782, 451 P.2d 422].)

In *Green, supra,* the California Supreme Court saw no constitutional inconsistency between the principles declared in *Barber* and the long-established "prior testimony" exception to the hearsay rule (Evid. Code, §§ 1290-1292[2]), but observed that *Barber* "adds the factor of necessity to the constitutional aspect of confrontation—which factor may, in appropriate cases, outweigh the lack of contemporaneous cross-examination." (70 Cal.2d at p. 664, see fn. 10.)  ■  Accordingly, the *Barber* rule was articulated thusly in *Green*: "the 'contemporaneous' cross-examination which alone, in the absence of a legal showing of necessity, can be considered fully effective and constitutionally adequate is cross-examination at the *same time* as the direct testimony is given, before the *same trier* as must ultimately pass on the credibility of the witness and the weight of that testimony." (P. 661.)

The *Green* case did not define the factor of "necessity" which would obviate the contemporaneous cross-examination emphasized in *Barber,* and declined to consider, because it had no occasion to do so, the question whether testimony given at a preliminary hearing, which testimony is clearly contemplated by Evidence Code section 1291, satisfies the confrontation clause of the Constitution. (See *People* v. *Green, supra,* 70 Cal.2d 654, 664, fn. 10.) In *People* v. *Peters,* 276 Cal.App.2d 71, 78 [80 Cal. Rptr. 648], such "necessity" was equated with a showing that the testimony given at the preliminary hearing was necessary at the trial and that a good

---

[2]Evidence Code section 1291, subdivision (a), subsection (2) provides that evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness when the present defendant was a party at the hearing in which that testimony was given and "had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the [present] hearing."

faith effort was made, with reasonable diligence, to procure the attendance of the unavailable witness. (See *People* v. *King*, 269 Cal.App.2d 40, 42 [74 Cal.Rptr. 679]; *People* v. *Haeberlin*, 272 Cal.App.2d 711, 721-722 [77 Cal.Rptr. 553].)

■ In *Peters* the reviewing court observed as follows: "In considering the necessity to use the transcript of testimony at the preliminary hearing, the unavailability of the witness is one criterion; but another is the constitutional and statutory imperative to bring the case to trial speedily. If the case is dismissed, the unavailability of the witness may thereafter be compounded by the unavailability of the defendant (Pen. Code, § 1382, subd. 2), and the criminal may go unpunished." (276 Cal.App.2d at p. 78.)

In the instant case defendant's counsel at the preliminary hearing was on notice that Guthrie might not be available as a witness at the trial because he would be leaving the jurisdiction for military service in Vietnam. We may presume that he was aware of the provisions of Evidence Code section 1291, subdivision (a)(2) and Penal Code section 686[3] which would permit the use of the preliminary transcript at the trial. ■ The record shows that defendant's counsel extensively cross-examined Guthrie at the preliminary hearing. The examination satisfied the requirements of Evidence Code section 1291 which provides for the use of former testimony where the witness is unavailable and the present defendant was a party at the prior hearing if, at the prior hearing, the defendant had the right and opportunity to cross-examine the witness with an interest and motive similar to that which he has at the present hearing. As observed in *King, supra,* the interest and motive for the cross-examination of a prosecution witness at the preliminary hearing and at the trial are similar, notwithstanding that the cross-examination at the preliminary hearing may, by the very nature of that proceeding, be less reaching than at the trial. (269 Cal.App.2d at p. 47.)

■ We are also satisfied that there was a showing that Guthrie's testimony was necessary at the trial since he was the only eyewitness to the alleged robbery. We also take notice of the fact that the information

---

[3]Penal Code section 686, in pertinent part, provides: "In a criminal action the defendant is entitled: . . . 3. To produce witnesses on his behalf and to be confronted with the witnesses against him, in the presence of the court, except that: (a) Hearsay evidence may be admitted to the extent that it is otherwise admissible in a criminal action under the law of this state. (b) The deposition of a witness taken in the action may be read to the extent that it is otherwise admissible under the law of this state."

was filed on June 6 and that it was incumbent upon the prosecution, in the absence of a waiver by defendant, to bring defendant to trial within 60 days after the filing of the information, that is, no later than August 5. Here there was no such waiver and the cause came on for trial on the last day within the 60-day period.

In the light of the foregoing authorities, however, it is not enough to show that the witness is unavailable, that his testimony is necessary at the trial, and that the witness was cross-examined at the preliminary hearing as provided in Evidence Code section 1291. The burden is on the prosecution to show that it made a good faith effort, with reasonable diligence, to procure the attendance of Guthrie at the trial. (*People* v. *Ward,* 105 Cal. 652, 656 [39 P. 33]; *People* v. *Horn,* 225 Cal.App.2d 1, 4 [36 Cal.Rptr. 898]; see *People* v. *Nieto,* 268 Cal.App.2d 231, 239 [73 Cal. Rptr. 844].) In establishing "due diligence" it is not enough to show that the witness has not been found, but there must be evidence of a substantial character to support the conclusion of due diligence. (*People* v. *Redston,* 139 Cal.App.2d 485, 494 [293 P.2d 880]; *People* v. *Banks,* 242 Cal. App.2d 373, 376 [51 Cal.Rptr. 398].) It contemplates something more than a desultory and indifferent search, but connotes persevering application and untiring efforts in good earnest. (*People* v. *McDonald,* 66 Cal. App.2d 504, 509 [152 P.2d 448]; *People* v. *Redston, supra*; *People* v. *Horn, supra,* at p. 5.) The term "due diligence" is, however, "incapable of a definition so mechanical and precise as to constitute a rule of thumb" (*People* v. *Horn, supra,* at p. 5), and is largely within the discretion of the trial court, and depends upon the facts and circumstances of each particular case. (*People* v. *Cavazos,* 25 Cal.2d 198, 200-201 [153 P.2d 177]; *People* v. *Banks, supra*; *People* v. *Horn, supra.*)

After considering all the elements and circumstances in this case, we conclude that the prosecution established that it made a good faith effort, with reasonable diligence, to procure Guthrie's attendance at the trial. There was no negligence in not serving a subpoena upon Guthrie prior to his departure from California on June 16 because no trial date had been set. As disclosed by the record, the trial date of July 29 was first set on July 5. The prosecuting authorities were not required to show due diligence to keep the witness in the state (*People* v. *Carswell,* 51 Cal.2d 602, 605-606 [335 P.2d 99]), but due diligence in attempting to locate him within a reasonable time before trial. (*People* v. *Banks, supra,* 242 Cal.App.2d 373, 377.) In assessing whether due diligence has been exercised, an important element to be weighed by the trial court is the lapse of time between the date when the People knew the missing witness would be needed and the start of the search to locate him. (*People* v. *Horn, supra,* 225 Cal.App.2d 1, 8; *People* v. *McDonald, supra,*

66 Cal.App.2d 504, 508; *People* v. *Kuranoff*, 100 Cal.App.2d 673, 677 [224 P.2d 402].) ▮ Here, although the People first knew on July 5 that the trial was set for July 29, they did not attempt to locate Guthrie until July 31, about four days before August 5, the date to which the trial had been postponed. While such an effort appears, at first blush, to be desultory and indifferent, we apprehend that it must be considered in the light of other pertinent circumstances, since the element of lapse of time between the date when the People know that a witness is needed and the start of the search to locate him is not the only element to be considered. (See *People* v. *Horn, supra.*) In the instant case it is apparent that if the People had begun to search for Guthrie on July 5 they would have ascertained that he was in Vietnam. Another important consideration is that the prior cooperation of the witness would entitle the prosecuting officials to entertain the assumption that if Guthrie had not departed for Vietnam he would be readily available. (See *People* v. *Horn, supra.*)

▮ We are thus projected to the pivotal question whether, if the prosecuting authorities had made inquiry concerning Guthrie immediately after July 5, he would have been made available as a witness. Such availability would, of course, require that Guthrie return from Vietnam. Here Officer Shelley's testimony indicates that he was advised by the legal officer of the Marine Corps that Guthrie was in Vietnam and would be unavailable for the trial. On cross-examination by defendant's counsel Shelley also testified that, following the receipt of the letter from the legal officer, he again called the legal officer's chief clerk to determine the possibility of returning Guthrie so that he might be a witness in the case. Defense counsel did not interrogate Shelley as to what response, if any, he received to this inquiry. This testimony and the evidence that Guthrie had departed for Vietnam on June 16 justified an inference that Guthrie would not be available as a witness at the trial. Although it appears that the court indicated that it would take judicial notice that the prosecuting authorities could not take Guthrie from his military duty if he was under orders to some foreign station, the basis for such notice does not appear in the record. Pursuant to Evidence Code section 452, it appears that judicial notice could be taken of regulations issued by or under the authority of the United States or any public entity in the United States. (Subd. (b).) The record discloses that although the statement of defendant's counsel at the trial, "Well, if the Court takes judicial notice of that fact," to which the court responded that it would do so, may be interpreted as a request that the court take judicial notice as is required by Evidence Code section 453, there is nothing in the record to indicate that, as required by the statute, the court was furnished with sufficient information to enable it to take judicial notice of the matter. Suffice it to say, as already pointed out, the

trial court was justified in drawing the inference that Guthrie was unavailable as a witness and that reasonable diligence, once it was determined that he was needed, would not have produced him as a witness at the trial.

We, therefore, hold upon a consideration of all the elements in the situation that the trial court, within the proper bounds of its discretion, was justified in admitting Guthrie's testimony given at the preliminary hearing on the basis that necessity and good faith are established by the evidence and that these factors outweigh the lack of contemporaneous cross-examination.

Defendant also asserts that prejudicial error occurred twice in the instructions given to the jury. The first assertion of error is that the trial court failed to repeat the instructions on presumption of innocence, reasonable doubt, and burden of proof as stated in CALJIC instruction No. 21 (Rev.) before the jury retired, but only reiterated the instruction as stated in CALJIC instruction No. 22 (Rev.) to the effect that the law does not require demonstration of that degree of proof which, excluding all possibility of error, produces absolute certainty, because such degree of proof is rarely possible. The record discloses that following the reading of the information at the commencement of the trial, the judge instructed the jury in the language of both CALJIC No. 21 (Rev.) and CALJIC No. 22 (Rev.). At the conclusion of the case prior to the retirement of the jury for its deliberations the trial judge repeated CALJIC No. 22 (Rev.) but did not restate CALJIC No. 21 (Rev.). He did, however, prior to restating CALJIC No. 22 (Rev.), instruct the jury as follows: "I also instructed you before that the defendant has pleaded not guilty and the People then have the burden of proving beyond a reasonable doubt, and I have explained to you yesterday what reasonable doubt was. It is doubt based upon reason, and I will so instruct you."

It is not error to instruct in terms of CALJIC No. 22 provided that instruction is given in conjunction with one defining reasonable doubt in the language of Penal Code section 1096. (*People* v. *Eggers,* 30 Cal.2d 676, 688 [185 P.2d 1]; *People* v. *Derenzo,* 46 Cal.App.2d 411, 416 [115 P.2d 858]; *People* v. *Kennelly,* 166 Cal.App.2d 261, 264 [332 P.2d 733].) CALJIC No. 21 defines reasonable doubt in the language of Penal Code section 1096. Accordingly, it is proper to give the CALJIC No. 22 (Rev.) instruction in conjunction with CALJIC instruction No. 21 (Rev.). (*People* v. *Kennelly, supra.*) Here it was proper for the trial court to give these two instructions at the beginning of the trial. (*People* v. *Webb,* 66 Cal.2d 107, 128 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708]; *People* v. *Jones,* 184 Cal.App.2d 464, 473 [7 Cal.Rptr. 424]; Pen. Code, § 1093, subd. 6.) When the court determined to reiterate CALJIC No.

22 (Rev.) at the conclusion of the trial, it should also have repeated CALJIC No. 21 (Rev.) in order to avoid the placing of emphasis on the former. We do not, however, believe that the procedure followed by the court resulted in defendant's prejudice so as to require a reversal of his conviction. Here the trial consumed only two days. When the court reiterated CALJIC No. 22 (Rev.) on the second day it reminded the jury of its instruction on the previous day with respect to the definition of reasonable doubt. The court also charged the jury when it instructed on the second day that they were to "bear in mind these instructions I am about to give in connection with those I gave yesterday." On the previous day the jury was instructed that they were to consider all the instructions as a whole and in the light of all the others. Under the circumstances, we are satisfied that the reiteration of CALJIC No. 22 (Rev.) did not curtail or diminish the quantum of proof required by Penal Code section 1096, and that the jurors were aware throughout the case that the People were required to prove defendant guilty beyond a reasonable doubt as defined at the beginning of the trial.

■ The other assignment of error concerns a statement of the trial judge, in conjunction with the giving of CALJIC instruction No. 57 (new) with respect to the weight the jury should give to the opinion of a lay witness, as follows: "Now, we didn't have any expert witness here, but the defense has asked me to give this instruction." This statement, it is argued, left the impression that the court gave the instruction merely as a gratuity to the defense, and hence the jury could erroneously conclude that the instruction was irrelevant and thus to disregard it. Although it was unnecessary for the trial court to make the subject statement, we perceive no prejudicial error. CALJIC No. 57 (new) contains the statement "In determining the weight to be given to an opinion expressed by any witness *who did not testify as an expert witness,* . . ." (Italics added.) The court was apparently attempting to remind the jury that no expert witness had testified in the case. We observe, moreover, that the challenged statement was made after the court had already given an instruction on the weight to be given to an opinion expressed by any witness who did not testify as an expert witness. Under these circumstances we do not believe that the purport of CALJIC No. 57 (new) was disregarded by the jury in view of the court's specific instruction that they were to consider all instructions as a whole and in the light of all the others.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 19, 1970.