36 Cal.Rptr. 898]

[Crim. No. 88. Fifth Dist. Feb. 18, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES
EDWARD HORN, Defendant and Appellant.

Jay W. Powell for Defendant and Appellant.

Stanley Mosk, Attorney General, Raymond W. Momboisse and Daniel J. Kremer, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—The defendant, James Edward Horn, appeals from convictions on three counts of forgery. The evidence shows that the defendant and James Stanley Mallow, jointly charged with him in the information, and Aubrey Lloyd ("Skeeter") Johnson, entered into a conspiracy to forge and cash 10 checks, the forms of which had been stolen from the B & R Casing Company. The jury's verdict with respect to the three checks actually forged and uttered is amply supported by the evidence.

There is only one point raised on the appeal—that the court erred in admitting over objection the recorded testimony of the above named Johnson given at the preliminary hearing. He did not appear as a witness at the trial, and the district attorney attempted to lay the essential foundation for the admission of the testimony given by him at the preliminary examination. After a full presentation of the attempt to subpoena Johnson, the court announced that it was of the opinion that due diligence had been exercised by the district attorney within the meaning of subdivision 3 of section 686 of the Penal Code, and the former testimony of Johnson given at the preliminary hearing was thereupon received in evidence. Without this testimony, the record would not justify the conviction. Johnson, of course, was an accomplice; there is ample corroboration of his testimony, but his evidence is the central and essential factor that makes crystal clear the participation of James Edward Horn as a principal in the criminal activity. This fact stresses the importance of the court's ruling admitting his testimony. For if the court's

ruling was wrong, then clearly it constituted prejudicial error and would require a reversal.

Penal Code section 686 provides in part as follows:

"In a criminal action the defendant is entitled:

"1. . . . . . . . . . . . . . . .

"2. . . . . . . . . . . . . . . .

"3. ... to be confronted with the witnesses against him, in the presence of the court, except that where the charge has been preliminarily examined before a committing magistrate and the testimony taken down by question and answer in the presence of the defendant, who has ... cross-examined or had an opportunity to cross-examine the witness; ... the deposition of such witness may be read, upon its being satisfactorily shown to the court that he . . . can not without due diligence be found within the state; . . ."

If there is satisfactory evidence that the missing witness is not within the state or deceased, no further preliminary showing is necessary to justify a ruling that the recorded evidence given at the preliminary examination is admissible (*People* v. *Carswell,* 51 Cal.2d 602, 605 [335 P.2d 99]), but if neither one of these eventualities can be shown, it is necessary for the prosecution to prove "due diligence" in its attempt to produce the missing witness at the trial as a preliminary condition to the reading of his testimony.

The district attorney has the burden of proof; as is stated in *People* v. *Ward,* 105 Cal. 652, 656 [39 P. 33] : "The right of the defendant in a criminal prosecution to be confronted with the witnesses against him in the presence of the court is one of the fundamental principles of the common law, and can be taken from him only by the provisions of some express statute. As this is a right clearly connected with his personal liberty, any statute purporting to impair the right is to be liberally construed in his favor; and whenever the state in its prosecution for a crime would offer against the accused the testimony of witnesses not given in the presence of the court, it must point to a statute which authorizes such procedure, and bring itself clearly within the provisions of that statute."

In *People* v. *Harding,* 180 Cal.App.2d 152, 155 [4 Cal. Rptr. 120], it is said: "... the burden is on the prosecution to show due diligence in finding a missing witness in this state before the previously recorded testimony of such witness may be read in evidence."

Appellant discusses at length in his briefs the question of

what constitutes due diligence within the meaning of the California Penal Code, quoting from the opinion in *People* v. *Redston,* 139 Cal.App.2d 485, 494 [293 P.2d 880], as follows: ''To say that a witness has not been found is not the same as swearing that he cannot, with due diligence, be found within the state. The word 'diligence' connotes persevering application, untiring efforts in good earnest. There must be evidence of a substantial character to support the conclusion of due diligence.''

In *People* v. *Cavazos,* 25 Cal.2d 198, 200-201 [153 P.2d 177], the Supreme Court states that: ''The question of what constitutes due diligence to secure the presence of a witness which will authorize the reading to the jury of testimony taken at the preliminary hearing of the case, is largely within the discretion of the trial court, and depends upon the facts of each particular case. The decision of a trial judge on the question of diligence and of the propriety of receiving or rejecting the evidence will not be disturbed on appeal unless it appears that there was an abuse of discretion. [Citations.] The problem is primarily for the trial court, and its solution will not be disturbed if there is evidence of substantial character to support its conclusion. [Citations.]''

The term ''due diligence'' is incapable of a definition so mechanical and precise as to constitute a rule of thumb. In passing upon the admissibility of the evidence, the trial court must determine whether the alertness and activity of the prosecuting official in attempting to secure the presence of the missing witness lead fairly to the conclusion that he has shown such a sincere and reasonable diligence as to warrant the application of the rule permitting a substitution of the recorded testimony of the witness for his evidence in person. (*People* v. *Volk,* 221 Cal.App.2d 291, 294 [34 Cal.Rptr. 351]; *People* v. *Johnson,* 13 Cal.App. 776, 779 [110 P. 965]; *People* v. *Land,* 137 Cal.App. 196, 198 [30 P.2d 433]; *People* v. *McFadden,* 192 Cal.App.2d 212, 215 [13 Cal.Rptr. 129]; *People* v. *Crumbley,* 204 Cal.App.2d 591, 596 [22 Cal.Rptr. 369].)

The trial judge did not make his ruling out of hand but after a complete presentation of the facts surrounding the attempt to secure the presence of the missing witness. His discretion was exercised only after hearing extensive argument and evidence on the question; the court then stated: ''I have found that due diligence to locate the witness has been exercised by the District Attorney's office and that the evi-

dence presented by the District Attorney's office further indicates that further diligence would not have resulted in any discovery of this witness who apparently is not making himself available.''

Incidentally, the trial court adhered to this view in later denying appellant's motion for a new trial.

The evidence on the question may be summarized as follows:

1. A subpoena for Aubrey Lloyd Johnson was received by the Fresno County Sheriff's Office on May 9;

2. Sergeant Bailey of the Fresno Sheriff's Office checked the address given on the subpoena—Central and Orange, Fresno; information received there indicated that Johnson had left the state;

3. The local telephone directory and the local city directory were checked with negative results;

4. Johnson's probation officer, Mr. Newell, was contacted on May 10; he stated that the last word from the witness was a letter dated May 7, 1963, giving his address as the Brea Hotel, Brea, California;

5. That same day, May 10, 1963, Captain Barry, head of the civil division of the Santa Ana Sheriff's office was requested to check the Brea address and the general area;

6. The Brea hotel records from 1961 to April 1962 and from January 1, 1963, to date of trial failed to disclose any sign of Johnson, and the manager of the Brea Hotel stated that he had no knowledge of Johnson;

7. The Brea post office, which Johnson had given as his mailing address, was checked with negative results, and the local police department stated it had no knowledge of Johnson;

8. Deputy Sheriff Rice of the Fresno Sheriff's Office contacted Bernice Moore, a friend of Johnson's, who said that she had no knowledge of Johnson's whereabouts and had not seen him since the preliminary hearing;

9. On May 10, 1963, Rice contacted Mark Cann, bondsman for Johnson; who said that he had no knowledge of where Johnson was although other bondsmen in the Los Angeles area were searching for him;

10. Rice talked with George Carter, attorney of record for Johnson in another case, with negative results;

11. On May 8, 1963, the Fresno District Attorney's Office had sent a subpoena for Johnson to James Music, Sheriff of Orange County; the subpoena was returned with a notation

that the Brea Hotel records, hotel manager, post office and police department had been checked without any clue;

12. The Fresno District Attorney's Office contacted Johnson's attorney in another matter, Mr. George Carter, "several" times in the two weeks preceding trial with regard to Johnson's whereabouts; Mr. Carter stated that he had not seen Johnson for about six weeks and that Johnson had failed to appear as required in a trial the week before; at the District Attorney's request, Mr. Carter also undertook to search for Johnson; the results of his search were furnished to Mr. Rice of the Fresno Sheriff's Office;

13. Mr. Carter contacted Mr. Mark Cann, Johnson's bondsman and other several people at a bar where Johnson had been employed with negative results;

14. Mr. Carter interviewed a former woman friend of Johnson, Joy Conte, who said she had no knowledge of where he then was;

15. Mr. Carter discussed the problem with the local FBI officials, but reported that he made no headway in locating his client.

It should also be noted that the trial court believed from the evidence that Johnson was probably in hiding and deliberately evading service; this was a factual element which the court was entitled to weigh in determining the question before it. (*People* v. *Gardner,* 192 Cal.App.2d 357, 366 [13 Cal.Rptr. 477].)

What was said in *People* v. *O'Shaughnessy,* 135 Cal.App. 104, 110 [26 P.2d 847] of a missing witness who could not be found because he was traveling can also be said of one who is hiding.

"... no good could be accomplished by requiring that an officer make a pretense of looking for the witness in a number of places where he could not reasonably be expected to be found or by requiring that an extensive or expensive search be made in every county of the state. There is nothing to indicate that any greater degree of diligence in this case would have secured the presence of this witness or that the diligence used was not reasonable under the circumstances."

Appellant's counsel argues that the district attorney did not take out a subpoena early enough and that the time afforded the peace officers of the state to serve the subpoena was thus unduly shortened. As supporting the argument, the appellant cites *People* v. *McDonald,* 66 Cal.App.2d 504 [152 P.2d 448]; *People* v. *Kuranoff,* 100 Cal.App.2d 673 [224 P.2d

402] ; and *People* v. *Redston, supra,* 139 Cal.App.2d 485 [293 P.2d 880]. These cases taken together indicate that one element to be weighed by the trial court in assessing due diligence is the lapse of time between the date when the People knew that the missing witness would be needed and the start of the search to locate him. But this is only one of the elements to be considered. As bearing on that particular question, the court may well consider whether it appeared likely to a prosecuting attorney preparing for trial that there would be no difficulty in securing the attendance of the witness. Prior cooperation of the witness with the prosecuting officials would tend to convince the court that the district attorney originally assumed with propriety that Johnson would be readily available. (*People* v. *Gardner, supra,* 192 Cal.App.2d 357, 366; *People* v. *O'Shaughnessy, supra,* 135 Cal.App. 104, 109; *People* v. *Noone,* 132 Cal.App. 89 [22 P.2d 284].) As the trial judge himself pointed out, Johnson had been available at prior hearings, had local counsel in another case, and had a court appearance scheduled near the date of trial; it could well be added that he was under bond and had the duty to report periodically to the probation officer of Fresno County and that only one week before the trial he had sent that official an address where he said he could be readily reached.

 After a careful consideration of all the elements in the situation, we conclude that the trial court, within the proper bounds of its discretion, had ample grounds for the ruling admitting the testimony given at the preliminary examination. (*People* v. *Cavazos, supra,* 25 Cal.2d 198, 200-201; *People* v. *Gardner, supra,* 192 Cal.App.2d 357; *People* v. *Fisher,* 208 Cal.App.2d 78, 82 [25 Cal.Rptr. 242] ; *People* v. *Thomas,* 164 Cal.App.2d 571, 576-577 [331 P.2d 82].)

The judgment is affirmed.

Brown (R.M.), J., and Stone, J., concurred.