[Crim. No. 247. Fifth Dist. May 20, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. JOHNNY BANKS, Defendant and Appellant.

Johnny Banks, in pro. per., and Roy H. Arnold, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and David L. Kelly, Deputy Attorneys General, for Plaintiff and Respondent.

STONE, J.—This is an appeal from a judgment and sentence (Pen. Code, § 1237, subd. 1) of second degree murder, after a trial by jury.

About 5:30 p.m. on July 31, 1964, appellant was sitting on the curb in front of the stairway entrance to a second-floor hotel in the "West End" of Sacramento. James Ranson, Jr., emerged from the hotel entrance, crossed the sidewalk, and struck appellant on the back of the head with a stick. The stick broke and Ranson turned and ran up the hotel steps, pursued by appellant, knife in hand. At about the fifth stair from the top, appellant turned, ran down the stairs and out into the street. Ranson continued the last four or five stairs to the hotel office, where he fell, mortally wounded. His body bore six laceration wounds, including an incised wound of the heart, the immediate cause of death.

In a pool of blood on the hotel steps, police officers found a Los Angeles bail receipt issued to appellant on July 19, 1964. Also found on the steps was an appointment slip for the Sacramento County Hospital Social Service Division, dated November 15, 1963, bearing appellant's name.

At the preliminary examination held April 29, 1965, Roy DeWitt testified that on July 31, 1964, he saw Ranson come out of the hotel and strike appellant on the head with a "stick." He saw appellant, known to him as "Gray Eye," jump up, knife in his hand, and chase Ranson, "cutting him on the way up the stairs." Appellant then came back down the stairs with blood on his shirt, and walked away.

The witness DeWitt disappeared before the trial and his testimony was read to the jury. It is significant that appellant's counsel, a member of the public defender's staff, extensively

cross-examined the witness DeWitt at the preliminary hearing and that this same attorney represented appellant at the trial.

Appellant testified that he was not in Sacramento on July 31, 1964, but that he had been in Sacramento the night before, July 30. He admitted the bail receipt and hospital appointment slip found on the stairs, were his. He explained their presence on the stairs and in a pool of the victim's blood by the fact that he carried his papers in a brief case which a friend had kept for him at the New Hotel, the scene of the knifing, and apparently when he obtained the brief case from his friend's room and carried it down the stairs his papers must have dropped out on the stairs where they were found after the knifing. Appellant also accused DeWitt of lying at the preliminary examination, and attributed this to a mistaken belief by DeWitt that appellant had informed on him for alleged welfare violations.

Over appellant's objections, the trial court permitted DeWitt's testimony at the preliminary hearing to be read to the jury after finding that the district attorney used due diligence in attempting to locate the missing DeWitt.

Appellant's principal ground of appeal is that the prosecution did not use due diligence to locate and produce the missing witness so that reversible error was committed by the use of his testimony given at the preliminary hearing. ▪ If the testimony of a missing witness given on another occasion is to be used by the People, it is the burden of the prosecution to establish that the requirements of Penal Code section 686, subdivision 3, are met. In the case of a missing witness the prosecution must show by substantial evidence that due diligence was exercised in attempting to locate him. (*People* v. *Carswell,* 51 Cal.2d 602, 605 [335 P.2d 99] ; *People* v. *Horn,* 225 Cal.App.2d 1, 4 [36 Cal.Rptr. 898] ; *People* v. *Harding,* 180 Cal.App.2d 152, 155 [4 Cal.Rptr. 120] ; *People* v. *Ward,* 105 Cal. 652, 656 [39 P. 33] ; *People* v. *Redston,* 139 Cal.App. 2d 485, 494 [293 P.2d 880].) ▪ Whether due diligence has been shown is a question of fact to be determined according to the circumstances of each case. (*People* v. *Horn, supra,* at p. 5 ; *People* v. *Volk,* 221 Cal.App.2d 291, 294 [34 Cal.Rptr. 351] ; *People* v. *Marshall,* 184 Cal.App.2d 535, 538 [7 Cal.Rptr. 589].)

▪ Without detailing the efforts of the various law enforcement officers, we note that once the prosecution commenced looking for the missing DeWitt, the record supports the finding of due diligence. Not only was an intensive search made during the 10-day period prior to trial, but the search

continued during the trial, including a three-day recess for the Fourth of July weekend. Additionally, the court granted a one-day continuance during trial to further the search.

The pivotal question, then, is whether the search was begun within a reasonable time before trial. As to this issue, the evidence discloses that the witness DeWitt disappeared after the preliminary and before trial.

DeWitt, a seasonal field worker, occasionally worked in local car washes, he had resided in Sacramento for at least five and possibly 10 years, and was well known in the West End. Although served with subpoena, he was a willing and cooperative witness at the preliminary, voluntarily providing his own transportation to the hearing. According to the testimony of an investigator for the district attorney's office, DeWitt called at the office two or three times after the preliminary hearing to inquire about the case and the trial date. These contacts were made, however, before the trial date had been set. A deputy district attorney testified that after the preliminary hearing he talked with DeWitt, who said he had been friendly toward the deceased and that he was willing to testify against the defendant. The deputy asked him to contact the district attorney's office if he decided to leave the area for any considerable period of time. DeWitt assured him that he was not going anywhere but if he planned to leave the area he would notify the office.

Thus, delay in securing a subpoena to insure DeWitt's attendance at the trial did not, standing alone, show a lack of due diligence in securing his presence as a witness. In view of the evidence, the district attorney had no reason to believe DeWitt would disappear; rather, there was every reason to believe he would be available when needed. The court properly took this circumstance into consideration. (See *People* v. *Horn, supra,* 225 Cal.App.2d 1, 8.) Furthermore, it was brought out that DeWitt left the Sacramento area before the trial date was fixed. It appears from the record that DeWitt secreted himself and purposely left no information of any kind as to his destination when he left his usual place of residence. We cannot say the trial court erred in concluding ". . . that every effort has been made to find this man, . . . he's either concealing his whereabouts or he has disappeared or he may even have gone to New York as suggested by Defendant, and the court is going to permit the Preliminary transcript to be read." (See *People* v. *Cavazos,* 25 Cal.2d 198, 200-201 [153 P.2d 177]; *People* v. *Horn, supra,* at pp. 6-7.)

Appellant presents the constitutional argument that the application of the Sixth Amendment to the states in the light of *Pointer* v. *Texas,* 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923] makes suspect the provisions of Penal Code section 686, subdivision 3, insofar as it provides that ". . . where the charge has been preliminarily examined before a committing magistrate and the testimony taken down by question and answer in the presence of the defendant, who has, either in person or by counsel, cross-examined or had an opportunity to cross-examine the witness; . . . the deposition of such witness may be read, upon its being satisfactorily shown to the court that he . . . cannot with due diligence be found within the state; . . ."

We do not construe *Pointer* v. *Texas, supra,* or its companion case, *Douglas* v. *Alabama,* 380 U.S. 415 [85 S.Ct. 1074, 13 L.Ed.2d 934] to be so far-reaching as does appellant. ▮ Rather, each case in which the former testimony of a missing witness is offered pursuant to Penal Code section 686, subdivision 3, must be examined in the light of the *Pointer* and *Douglas* cases to determine whether the right of confrontation under the Sixth Amendment has been violated. Appellant was confronted by the witness DeWitt at the time the testimony was given at the preliminary hearing, and he cross-examined the witness fully. The record reflects five pages of direct-examination, while the cross-examination covers some 10 pages. *Pointer* implies that this circumstance complies with the defendant's Sixth Amendment rights by the following at page 407 (1069): "The case before us would be quite a different one had Phillips' statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine."

The following from *Douglas* supports the foregoing language of *Pointer*: "We decide today that the Confrontation Clause of the Sixth Amendment is applicable to the States. Pointer v. Texas, 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923]. Our cases construing the clause hold that a primary interest secured by it is the right of cross-examination; an adequate opportunity for cross-examination may satisfy the clause even in the absence of physical confrontation." (380 U.S. at p. 418, 85 S.Ct. at p. 1076, 13 L.Ed.2d at p. 937.) (See also 5 Wigmore, Evidence (3d ed. 1940) § 1365 at p. 27, § 1397 at p. 127.)

We conclude that the *Pointer* and *Douglas* cases do not per se invalidate that part of Penal Code section 686, subdivision

3, relating to the use of a missing witness' testimony. ■ These cases do require the California courts to inquire into the circumstances of each case and determine whether the proffered testimony was given under adversary circumstances that permitted confrontation as well as cross-examination of the witness by the defendant. (See *People* v. *Dozier*, 236 Cal. App.2d 94, 101 [45 Cal.Rptr. 770].) ■ Since the attorney who represented appellant at the trial also represented him at the preliminary hearing when he thoroughly cross-examined the witness DeWitt, we find no violation of the Sixth Amendment.

There remains, however, appellant's contention that it was not until the preliminary hearing that he recognized the witness DeWitt as a person who had accused him of jeopardizing DeWitt's welfare standing. Assuming the truth of appellant's somewhat garbled account of the conversation with DeWitt upon which he predicates his charge of prejudice, the jury heard appellant's testimony of bias which they weighed in judging the credibility of DeWitt. ■ In any event, the bias developed by appellant's testimony would hardly justify excluding the testimony of the missing witness. He testified "I came down the street one night with Poppa Bob, an old fellow I called Poppa Bob, lived in the hotel. He stopped us and he said, 'You on the Welfare? What's your working name?' I said 'What's your—why you want to know?' He say, 'Somebody been informing on me,' you know, 'about me, and I don't like it.' Q. Now, this was Roy DeWitt said that? A. Yes, sir. Q. He said that somebody was informing on him? A. Yes. Q. Did he accuse you of doing it? A. He didn't exactly accuse me. He said, 'Somebody been informing on me.' He saying, 'I don't like it,' you know, and that time Pop told him—Poppa Bob told him, 'Somebody should inform on you,' you know, 'you go around here and steal welfare, draw your check.' I told him, 'Pop, come on, let's go,' and I carried him away from there. The first time I saw Mr. DeWitt."

■ Appellant suggests that the prosecution failed to call a material witness, one Jack Ree Haynes. There is nothing in the record to support the argument. At the time the prosecution offered the testimony of the witness Roy DeWitt, appellant intimated that he knew of other witnesses who could prove that DeWitt was lying. The court advised appellant he would be permitted to call all of the witnesses to whom he had reference, and that he was entitled to a continuance if necessary.

Appellant, speaking in person, advised the court that he wanted no continuance, and he failed to name a single witness whom he wished to call. It was not until the hearing on his motion for a new trial that appellant asserted the name of his accuser was one Jack Ree Haynes, and that the prosecutor failed to call him as a witness. The court reminded appellant that his accuser, whom his attorney cross-examined, was DeWitt. There is nothing else in the record pertaining to another witness or to the prosecution's failure to call a material witness, and no proof that there is such a person as Jack Ree Haynes.

The judgment is affirmed.

Conley, P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 13, 1966.