[Crim. No. 8525. First Dist., Div. Two. Dec. 22, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY RINEGOLD, Defendant and Appellant.

## COUNSEL

C. Randall Schneider, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Michael J. Phelan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TAYLOR, J.**—Defendant appeals from a judgment of conviction entered after a jury verdict finding him guilty of assault with a deadly weapon (Pen. Code, § 245).[1] He contends that: 1) the failure of his trial counsel to object to the admission of certain statements he made in custody after he refused to sign a written waiver of his *Miranda* rights does not prevent him from raising the matter for the first time on appeal; 2) the introduction of the testimony of the complaining witness at the preliminary examination, without a sufficient showing that the prosecution made a good-faith effort with reasonable diligence to obtain the presence of the witness at the trial, violated his Sixth Amendment right to confrontation; 3) the admission of evidence that he had a gun the day before the assault was prejudicial error; and 4) the evidence is insufficient to sustain the judgment.

Viewing the record most strongly in favor of the judgment, as we must, the following facts appear: During the night of June 24-25, 1969, several friends, including Mr. and Mrs. Stocker, Mr. and Mrs. MacIntyre, several children, Tim Dunphy, the victim "Bud" Hassink, and defendant were spending a brief vacation together in a home in Hopland near Highway 175. From his arrival late in the afternoon, as well as throughout the eve-

---

[1]The notice of appeal also purports to appeal from the order denying the motion for a new trial. As the order is not appealable, the purported appeal therefrom must be dismissed.

ning, defendant was very upset, stated that someone was after him, and that people didn't like him. He and Hassink were together and talking the entire evening. Hassink walked to the corner grocery and back with defendant, told him to relax, that no one would harm him, and to enjoy the vacation. Defendant remained disturbed and reiterated that people were after him and the planet was involved. Defendant and Hassink were to sleep in the living room. Hassink went to bed about 11 p.m. and saw defendant sitting on one of the other beds. Hassink told defendant he was tired and didn't want to talk to anyone. Hassink heard defendant walking around before he dropped off to sleep, and told him to relax and to go to sleep.

Tim Dunphy retired around midnight and later heard defendant and Hassink arguing. Hassink told defendant: "You are on an ego trip. Don't bring your reality into mine. Now go to sleep." Defendant also said that no one liked him.

Around 2 a.m., the occupants of the house were awakened by the sound of several shots. They found Hassink severely wounded and bleeding in the living room. He had been shot several times. Four bullet holes were found in the wall and two in the ceiling of the front room. Hassink's statement that the shots were fired from inside the room was confirmed by the investigation of the Mendocino County Sheriff. The slug of a .37 or .38 caliber bullet found in the house could have been fired from a .38 special or a .357 Magnum revolver. No weapon was found in or around the home.

Hassink saw the gun fire and heard six shots but could not identify defendant as his assailant. Immediately after the shooting, Hassink heard the screen door at the front slam and a man's footsteps running away, and saw that the front door was open. Hassink called for help. Defendant was not present when all the other occupants of the house entered the living room in response to Hassink's cries. Hassink had known defendant for about four years and had not had an argument with him the evening before, merely a conversation. Hassink was not aware of any enemies; as he was on vacation, no one except the others present knew where he was the night of June 24, 1969.

About 6:45 a.m. on the morning of June 25, Clarence Sanders was driving to work in Santa Rosa from his home some 7 or 8 miles east of Hopland on Highway 175. Sanders observed a young man standing by the road, stopped and asked him where he was going. The young man indicated he was traveling in "either direction," and Sanders took him to Santa Rosa. The young man did not appear rational. Subsequently, San-

ders described the general appearance of the young man but could not identify defendant as the person to whom he had given a ride that morning.

Over a defense objection, Tim Dunphy was permitted to testify that the day before the shooting, he had seen defendant in possession of a revolver at the Stocker's home in San Francisco. Mrs. Stocker stated that about a month before the shooting when defendant stayed with them in San Francisco, he said he would like to kill Hassink. At the time, she understood the comment to be a threat, but not in the physical sense.

On June 27, 1969, Captain Howard of the Mendocino Sheriff's Department, went to the Sonoma County jail to interview defendant, who was in custody on another matter. Captain Howard and his companion advised defendant of his *Miranda* rights and indicated that they were investigating a case involving an assault with a deadly weapon. Defendant replied that they were trying to trick him and were "after more than that." Defendant would not reply as to whether he understood his constitutional rights and refused to sign a written waiver of his *Miranda* rights. Defendant repeatedly asked the officers whether they were investigating only an assault and accused them of trying to trick him. He then more or less blurted out, "What would happen if a man were shot with a .357 Magnum?" Defendant continued: "Wouldn't it make a hole," simultaneously indicating with his hands an area about 10 inches in diameter. Defendant also asked: "Is Bud still alive?" At this time, neither Captain Howard nor his companion had said anything about a .357 Magnum or mentioned the name of the victim. The interrogation took place in the visitors' room and was terminated after 19 minutes when defendant indicated he did not want to talk any further. Captain Howard's testimony was admitted into evidence without objection from defense counsel.

■ Defendant first contends on appeal that Captain Howard's testimony concerning his statements after refusing to sign the waiver of his *Miranda* rights should not have been admitted and that his trial counsel's failure to object thereto does not preclude him from raising the matter on this appeal for the first time. Even assuming defendant's questions to Captain Howard were obtained in violation of defendant's *Miranda* rights, as they occurred after some interrogation, and his refusal to sign a written waiver,[2] it is well settled that the failure to raise the issue at trial is fatal (*In re Dennis M.,* 70 Cal.2d 444 [75 Cal.Rptr. 1, 450 P.2d 296]; *People*

---

[2]It is unclear from the record whether defendant's incriminating questions to Captain Howard were the product of the interrogation during which defendant felt he was being tricked, or whether he blurted them out on the assumption that the interrogation was over, or that he was protected by his refusal to sign the written waiver.

v. *Huddleston,* 275 Cal.App.2d 859 [80 Cal.Rptr. 496]; *People* v. *Duty,* 269 Cal.App.2d 97, 105 [74 Cal.Rptr. 606]).

■ Defendant attempts to rely on the affidavit of his trial counsel to excuse the failure to object. However, the affidavit is no part of the record on appeal and it is well settled in California that on direct appeal from a judgment, a reviewing court will not consider matters outside the record. Accordingly, the issue is not properly before us on this direct appeal (*People* v. *Gardner,* 71 Cal.2d 843 [79 Cal.Rptr. 743, 457 P.2d 575]), but to be considered in a separate habeas corpus proceeding (*In re Rinegold,* No. 9136, *post,* p. 723 [92 Cal.Rptr. 18]).[3]

■ Defendant's major contention on appeal concerns the reading at the trial of Hassink's testimony at the first preliminary hearing. Defendant contends that he was deprived of his Sixth Amendment right to confrontation and that the prosecution did not make a sufficient showing of its good faith efforts with reasonable diligence to obtain Hassink's presence at the trial.

The record indicates that at the first preliminary hearing held on July 25, 1969, Hassink testified and was extensively cross-examined by defendant's trial counsel. Thereafter, the matter was set for trial during September. At that time, Hassink, although under subpoena, did not appear and the first information was dismissed, presumably pursuant to Penal Code section 1382. A second preliminary hearing was scheduled for September 22, 1969, and again Hassink was under subpoena but failed to appear. A bench warrant was issued for his arrest but he was not found.

At the trial, which commenced on November 24, 1969, defendant was represented by the same counsel who had cross-examined Hassink at the preliminary hearing in July. The prosecuting attorney testified that since September 22, his office had obtained information that Hassink might be working at Western Records Studio and had forwarded this information, along with other addresses and duplicate subpoenas, to the Los Angeles and San Francisco Police Departments. Neither the Los Angeles nor the San Francisco authorities were able to locate Hassink and serve the subpoenas. The prosecution located and interviewed the MacIntyre family in Tennessee. Neither they nor Mr. Dunphy, who had just been brought back from Hawaii, knew the whereabouts of Hassink. The prosecution also contacted the Stockers, who believed they had seen Hassink a few weeks previously and informed him of what had transpired on September 22, so that presumably, Hassink was aware that he was needed to testify. The district attorney was unable to ascertain whether Hassink was in Cali-

---

[3]The matter has been transferred to this court by the Supreme Court to be considered with the appeal.

fornia or not and as late as November 25, 1969, the Mendocino deputy attempted to serve the subpoena and was unable to locate him.

Simultaneously, the Los Angeles Police Department was also looking for Hassink in connection with several burglaries and were equally unsuccessful. The Los Angeles police also talked to the Stockers, who indicated that Hassink had been seen in San Francisco, and was on his way to South America. A few days before the trial, Mr. Friend, a Mendocino Deputy Sheriff, went to San Francisco to look for Hassink but again was unsuccessful. At this point, defense counsel indicated that he accepted the testimony presented by the prosecution but thought "there should be a more detailed showing as to what efforts were made by Los Angeles or San Francisco or other agencies to try to find [Hassink]." The court, however, found that there had been an adequate showing of good faith and reasonable diligence and ruled that the transcript of Hassink's testimony at the first preliminary hearing would be admitted. Defense counsel renewed his constitutional objection as the testimony was read into the record.

■ In *Barber* v. *Page,* 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318], made retroactive in *Berger* v. *California,* 393 U.S. 314 [21 L.Ed.2d 508, 89 S.Ct. 540], the court recognized (at p. 722 [20 L.Ed.2d at p. 258]) that "there has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant," but held that a witness is not "unavailable" under this exception "unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial" (p. 725 [20 L.Ed.2d at p. 260]).

The California Supreme Court has interpreted *Barber* as providing the same right that this state affords by the "former testimony" exception to the hearsay rule (Evid. Code, §§ 1290-1292;[4] *People* v. *Pike,* 71 Cal.2d 595 [78 Cal.Rptr. 672, 455 P.2d 776]), which, as *Barber* points out, adds

---

[4]Evidence Code section 1291, subdivision (a), subsection (2), provides,. so far as pertinent: "Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and: . . .

"(2) The party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing."

The term "unavailable as a witness" is defined, in part, by Evidence Code section 240, subdivision (a), subsection (5), so far as pertinent, as meaning: "(a) Except as otherwise provided in subdivision (b), 'unavailable as a witness' means that the declarant is: . . .

"(5) Absent from the hearing and the proponent of his statement has exercised reasonable diligence but has been unable to procure his attendance by the court's process."

the factor of necessity to the constitutional aspect of confrontation. Necessity may, in appropriate cases, outweigh the lack of contemporary cross-examination (*People* v. *Benjamin,* 3 Cal.App.3d 687, 693-694 [83 Cal. Rptr. 764] (1970) hg. den.)

■ The pertinent factors for determining whether the requirements of *Barber* v. *Page* and the California statutes have been met, were recently summarized by this court (Division One) in *People* v. *Benjamin, supra,* at page 696, as follows: ". . . it is not enough to show that the witness is unavailable, that his testimony is necessary at the trial, and that the witness was cross-examined at the preliminary hearing as provided in Evidence Code section 1291. The burden is on the prosecution to show that it made a good faith effort, with reasonable diligence, to procure the attendance of Guthrie at the trial. (*People* v. *Ward,* 105 Cal. 652, 656 [39 P. 33]; *People* v. *Horn,* 225 Cal.App.2d 1, 4 [36 Cal.Rptr. 898]; see *People* v. *Nieto,* 268 Cal.App.2d 231, 239 [73 Cal.Rptr. 844].) In establishing 'due diligence' it is not enough to show that the witness has not been found, but there must be evidence of a substantial character to support the conclusion of due diligence. (*People* v. *Redston,* 139 Cal.App.2d 485, 494 [293 P.2d 880]; *People* v. *Banks,* 242 Cal.App.2d 373, 376 [51 Cal. Rptr. 398].) It contemplates something more than a desultory and indifferent search, but connotes persevering application and untiring efforts in good earnest. (*People* v. *McDonald,* 66 Cal.App.2d 504, 509 [152 P.2d 448]; *People* v. *Redston, supra; People* v. *Horn, supra,* at p. 5.) The term 'due diligence' is, however, 'incapable of a definition so mechanical and precise as to constitute a rule of thumb' (*People* v. *Horn, supra,* at p. 5), and is largely within the discretion of the trial court, and depends upon the facts and circumstances of each particular case. (*People* v. *Cavazos,* 25 Cal.2d 198, 200-201 [153 P.2d 177]; *People* v. *Banks, supra; People* v. *Horn, supra.*)"[5]

■ Defendant here does not challenge the obvious "necessity" of Hassink's testimony as Hassink was the victim. Defendant argues only that the efforts made were not sufficiently detailed to satisfy the requirements of "good faith" (*Barber*) with reasonable diligence (Evid. Code, § 240) to secure Hassink's presence at the trial.

We think that the trial court's ruling under the circumstances of the instant case was proper. Here, there is no indication that the prosecution did not move speedily after the setting of the case for trial (cf. *People* v.

---

[5]The U.S. Supreme Court recently noted: "A good-faith effort is, of course, necessary, and added expense or inconvenience is no excuse. It should also be open to the accused to request a continuation if the unavailability is only temporary" (*California* v. *Green,* 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930], concurring opinion of Harlan, J., fn. 22, at p. 514).

*Harris,* 266 Cal.App.2d 426 [72 Cal.Rptr. 423]) or made no efforts to serve the subpoenas on Hassink (*Berger* v. *California, supra; Barber* v. *Page, supra; People* v. *Nieto,* 268 Cal.App.2d 231 [73 Cal.Rptr. 844]). The Mendocino County sheriff's office, as well as two large metropolitan police departments, made independent attempts to find Hassink and serve the subpoenas. The prosecution contacted a number of other persons who, since they were present at the time of the offense, might be expected to know the whereabouts of Hassink. Several endeavors were made to serve the subpoenas.

Also of significance in the instant case is the Stockers' indication that they had seen Hassink, informed him of the occurrences of September 22, and that presumably he knew he was needed. Thus, the prosecution was faced with the victim of a serious offense, who knew he was needed as an essential witness and who apparently decided to make himself unavailable. Under these circumstances, defendant does not indicate what other additional steps the prosecution could have taken to secure the presence of Hassink at the trial. We hold that under the particular circumstances of this case, the good faith and due diligence requirements were met. Accordingly, the trial court did not abuse its discretion in ruling that Hassink's testimony at the first preliminary hearing was admissible (*People* v. *Smith,* 4 Cal.App.3d 403, 408-410 [84 Cal.Rptr. 412]; *People* v. *Benjamin, supra; People* v. *Peters,* 276 Cal.App.2d 71 [80 Cal.Rptr. 648]; cf. *In re Montgomery,* 2 Cal.3d 863 [87 Cal.Rptr. 695, 471 P.2d 15]).

▮▮▮ Defendant next contends that the admission of Dunphy's testimony that he saw defendant placing a revolver in his knapsack the day before the assault constitutes prejudicial reversible error under *Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]. Defendant contends that the evidence was not admissible as there was no showing that the weapon involved was the one with which the crime was committed.

It may be of some help to consider the well established rules concerning the admissibility of weapons. Where the prosecution's evidence is circumstantial, an implement by means of which it is likely that a crime was committed is admissible in evidence if it has been connected with the defendant (*People* v. *Peete,* 54 Cal.App. 333 [202 P. 51]; *People* v. *McCall,* 10 Cal.App.2d 503, 505-506 [52 P.2d 500]). *If the specific type of weapon used to commit a homicide is not known any weapons found in the defendant's possession after the crime that could have been employed are admissible.* There need be no conclusive demonstration that the weapon in defendant's possession was the murder weapon. But if the prosecution relies on a specific weapon or type, it is error to admit evidence that other

weapons were found in the defendant's possession, as this tends to show not that he committed the crime but only that he is the sort of person who carries deadly weapons (*People* v. *Riser,* 47 Cal.2d 566, 576-577 [305 P.2d 1]; *People* v. *Riggins,* 159 Cal. 113, 121 [112 P. 862]; *People* v. *O'Brien,* 130 Cal. 1, 5 [62 P. 297]; *People* v. *Yee Fook Din,* 106 Cal. 163 [39 P. 530]).

The distinctions set forth in *People* v. *Riser, supra,* are not exclusively applicable to homicide cases (see *People* v. *Daniels,* 71 Cal.2d 1119, fn. 16 at p. 1143 [80 Cal.Rptr. 897, 459 P.2d 225]) and provide a useful guide for the instant case where we are not concerned directly with the admission of the weapon but testimony that the day before the assault, defendant was seen with a revolver. ■ As stated in *People* v. *Bingham,* 44 Cal.App.2d 667 at page 669 [112 P.2d 941], the law is established in California that when a defendant denies that he possessed an instrumentality, such as a firearm, as distinguished from a specific type of gun, alleged to have been used in the commission of an offense, evidence is admissible to show that such an instrumentality was in fact possessed by the defendant at other times (*People* v. *Cato,* 13 Cal.App.2d 391, 394 [56 P.2d 1245]). This is true whether the possession of the instrumentality by defendant is shown to have been prior or subsequent to the offense upon which he is being tried (*People* v. *Palumbo,* 127 Cal.App. 703, 706 [16 P.2d 316]).

Furthermore, Evidence Code section 351 provides that all relevant evidence is admissible. Relevant evidence is defined by Evidence Code section 210 as ". . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." ■ Here, since the prosecution was not relying on any specific weapon, the court properly admitted Dunphy's testimony that defendant had a revolver the day before the assault, as this would tend to connect defendant with the crime.

■ Finally, defendant argues that the evidence is insufficient to support the judgment. No doubt this contention is in part based on the assumed success of his earlier contentions concerning the inadmissibility of his statements, the victim's testimony at the first preliminary, and the testimony concerning the gun. As we have concluded that all of these items were properly admitted into evidence, there can be little doubt that there is substantial evidence to support the judgment. The case against defendant was entirely circumstantial, but a number of significant items connected him with the assault on Hassink, namely: 1) defendant's presence in the same room with the victim prior to the shooting and his absence thereafter; 2) his statements to Officer Howard indicating knowledge of the victim's name and the type of weapon used; 3) his possession of a weapon on the

day prior to the assault; 4) his threat to kill the victim about a month prior to the assault; and 5) argument with the victim on the evening before.

█ An appellate court must assume in favor of a jury verdict the existence of every fact that the jury could have reasonably deduced from the evidence (*People* v. *Rosoto,* 58 Cal.2d 304, 321 [23 Cal.Rptr. 779, 373 P.2d 867]; *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]). The choice between different possible inferences that might also find support in the evidence is for the trial court and where the choice is based on substantial evidence, it cannot be disturbed on appeal (*People* v. *Hamilton,* 223 Cal. App.2d 542 [35 Cal.Rptr. 812]). █ Applying these principles to the instant case, it is readily apparent there is ample substantial evidence to support the jury's finding that defendant was the person who assaulted Hassink.

The judgment is affirmed and the purported appeal from the order denying the new trial dismissed.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied January 21, 1971, and appellant's petition for a hearing by the Supreme Court was denied February 17, 1971.