[Crim. No. 18759. First Dist., Div. One. Dec. 4, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
NORMAN FOSTER FORGASON, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Carol Jean Ryan, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Gary W. Schons, A. Wells Petersen, Alan S. Meth and Steven V. Adler, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ELKINGTON, Acting P. J.**—Defendant Forgason was found guilty by a jury of voluntary manslaughter (Pen. Code, § 192, subd. 1); his wife, Barbara, was the victim. His appeal is from the judgment which was thereafter entered upon the jury's verdict.

No contention is made that the evidence placed before the jury did not constitute substantial evidence supportive of their verdict. (See *People v. Redmond,* 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].) Instead Forgason argues, in part, that testimony of two witnesses at his preliminary examination who were unavailable at the trial should have been admitted under Evidence Code section 1291.

The prosecution had developed evidence at the trial as follows.

Forgason had been drinking heavily in a Livermore bar located alongside what may reasonably be described as a "skid row" hotel; among other things, the rooms appear to have been about 8 feet by 10 feet in size. He heard that his highly intoxicated wife was in bed in room 22 of the hotel with its manager, who was also a heavy drinker

and a patron of the bar. Forgason went to room 22 and found that the information was correct. He "got ahold of" the hotel manager and "hit [him] in the mouth and...split [his] eye open" rendering him "half unconscious," and then returned to the bar. At the bar's closing time, 2 a.m., he returned to room 22 where he again found his wife and the hotel manager. Upon observing Forgason, the latter fled to an adjacent room or closet, whereupon Forgason beat Barbara about the face, knocked her down, and probably kicked her. Her eye was blackened and puffed out, her nose was broken, and she was bleeding heavily about the head. After Forgason's departure Barbara refused to go to a hospital for her injuries, so the hotel manager placed her in bed in room 26 across, or down, the hall.

(Forgason had produced two witnesses at his preliminary hearing, Tong and Beecroft, who had been registered at the hotel. Tong testified that around 6 a.m. of the morning of the violence he had looked through the open door of room 26 and observed, apparently sleeping, a woman who had no blood on her face. Beecroft testified that at 4 o'clock of the same day's afternoon he also, through the open door of room 26, saw a woman on the bed; no blood, he said, was apparent on her face.)

The next morning Barbara's dead body was found in bed behind the closed door of room 26. She had readily discernable dried blood on her face, black eyes, and other apparent injuries. The cause of death was "subdural hemorrhage due to blunt trauma to the head." The blows could have been inflicted by a human fist, or "a foot with a shoe on it."

When Barbara's body was found, a package of Pall Mall cigarettes was found nearby in the room. Such cigarettes were smoked by a mentally unstable resident at the hotel with whom, Forgason testified, Barbara had been talking at the bar before she had left for room 22 of the hotel. Other evidence indicated that earlier on that day Barbara, a large woman, had had an argument with another bar patron, and had "slugged him and knocked him clear across the bar." That man had then threatened that he would "break her...neck."

A theory of Forgason's defense was that his wife's death was probably brought about by her barroom antagonist, or by the mentally deficient hotel resident who had been with her in room 26 after her beating by Forgason. Indeed, it would appear to have been his only defense.

In aid of his defense Forgason moved the court to allow in evidence the testimony of his preliminary examination witnesses, Beecroft and Tong, as is sometimes permitted by Evidence Code section 1291. A hearing was thereupon held on the issue whether those persons were "unavailable" as witnesses as required by section 1291. At the hearing the following evidence was developed.

The subject hotel had since been demolished, and the subject bar had gone out of business. Forgason had never seen Beecroft or Tong any place but in a bar. He, or his attorney, or both, had made a tour of all of Livermore's bars and had inquired about Beecroft and Tong of every bar patron they found. They had also similarly visited and inquired in bars of Hayward, Bethel Island, Dublin and Pleasanton. They had started their inquiries about a month before, when a definite trial date had been set. No helpful information was obtained. Tong had once held a job as a cook, but his erstwhile employer "didn't have no record of him any more.... He quit or hadn't come back or something,..." According to Forgason's attorney: "We asked anybody and everybody that knew or may have known these persons. We left messages at all these bars that they should contact the bartender if they came in, and so advise us. I have been with this man the last seven or eight days looking for these persons.... [¶] In addition, I went to Denny's Restaurant in the area, I went to the Howard Johnson Restaurant, I stopped at least seven persons of Chinese appearance and asked them if they knew or had heard of a Lee Tong. I did exactly the same thing in trying to locate those persons this time as I did in locating them the first time. I don't know anything further I could do..., your Honor." And the attorney said, "any time I saw a person of Chinese descent, I stopped him." They had visited about 12 restaurants, and about 30 bars and cocktail lounges. Nowhere could they obtain information of the witness' whereabouts.

Forgason and his attorney did not check generally with welfare agencies, or utility companies, or credit bureaus, or hotels or motels, or hospitals, or "jails or penal institutions anywhere in California." They considered "inquiry of these agencies...to be useless." They had "just checked with persons and places where [they] expected these two persons to be found." They carried blank subpoenas with them but had not placed them with the sheriff.

Evidence Code section 1291, as relevant, provides: "(a) Evidence of former testimony is not made inadmissible by the hearsay rule if the de-

clarant is unavailable as a witness and: (1) The former testimony is offered against a person who offered it in evidence in his own behalf on the former occasion or against the successor in interest of such person; or (2) The party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing."

A person is "unavailable as a witness" under Evidence Code section 1291 if "Absent from the hearing and the proponent of his statement has exercised reasonable diligence but has been unable to procure his attendance by the court's process." (Evid. Code, § 240, subd. (a) (5).)

■ """Whether [reasonable or] due diligence has been shown is a factual question to be determined according to the circumstances of each case.""" *(People v. Enriquez,* 19 Cal.3d 221, 235 [137 Cal.Rptr. 171, 561 P.2d 261].) "The term is incapable of a mechanical definition." *(People v. Linder,* 5 Cal.3d 342, 346-347 [96 Cal.Rptr. 26, 486, P.2d 1226].) It is sometimes said that a party's burden is "'to show that it made a good faith effort, with reasonable diligence, to procure the attendance'" of the witness. *(People v. Ringegold,* 13 Cal.App.3d 711, 719 [92 Cal.Rptr. 12]; *People v. Benjamin,* 3 Cal.App.3d 687, 694-695 [83 Cal.Rptr. 764].) More often it is simply held that there must have been a "good-faith effort" to obtain the witness' presence at trial. *(Barber v. Page,* 390 U.S. 719, 724-725 [20 L.Ed.2d 255, 259-260, 88 S.Ct. 1318]; *People v. Enriquez, supra,* p. 235; *In re Montgomery,* 2 Cal.3d 863, 867 [87 Cal.Rptr. 695, 471 P.2d 15]; *People v. Benjamin, supra,* p. 693.) Such an effort will be established only by evidence of a "substantial character" *(People v. Benjamin, supra,* p. 696), and it must, in any event, be "'something more than a desultory and indifferent search'" *(People v. Ringegold, supra,* p. 719; *People v. Benjamin, supra,* p. 696).

In criminal cases such as that before us courts have recognized, in determining the reasonableness of a party's diligence, the "wide disparity between the ability of the prosecution 'with unlimited funds, an entire police force and Sheriff's office, plus his own investigators at his disposal, to locate and subpoena a witness and that of a defendant who must rely primarily on his attorney who usually cannot expect any compensation whatever for his efforts.'" *(People v. Linder, supra,* 5 Cal.3d 342, 348.) The requirement of diligence "is a stringent one for the prosecution." *(People v. Salas,* 58 Cal.App.3d 460, 469 [129 Cal.Rptr. 871].)

Further, it is said that little, if any, importance will be placed upon the pro forma act of delivering a subpoena "in a timely fashion to the sheriff for service upon the missing witness," when the party is unable to suggest a place where he may be served. *(People* v. *Linder, supra,* 5 Cal.3d 342, 347.) And "'no good could be accomplished by requiring that an officer [or the interested party] make a pretense of looking for the witness in a number of places where he could not reasonably be expected to be found. . . .'" *(Id.,* p. 347, fn. 1; *People* v. *O'Shaughnessy,* 135 Cal.App. 104, 110 [26 P.2d 847].)

In concluding that Forgason had not exercised the required good faith, or reasonable or due diligence, the trial court found (1) "untimeliness," in failing to commence the witness search more than four weeks before the final and definite trial date, (2) failure to "enforce the subpoena power of this court by any law enforcement agency," and (3) that the search "should have been expanded to other agencies in [*sic*] places rather than being almost exclusively limited to the bars and restaurants."

We respectfully disagree with the trial court's conclusions.

It is commonly known that trial dates in criminal cases are often tentative, with little likelihood that the trial will then commence. Competent and experienced trial lawyers will keep in touch on such matters with their prosecutorial adversary, and the court and its attaches, and plan accordingly. Here, for instance, trial dates were set, and reset, six times over a six-month period before Forgason's case finally came on for trial. And the record establishes that promptly, upon reasonable assurance of a trial date certain, Forgason and his attorney commenced their efforts to locate the witnesses Beecroft and Tong. Rather than reasonable, we think it would be unreasonable, to require a criminally accused, under pain of a "lack of due diligence" finding, to compel his witnesses by subpoena, to attend court, at times he knows the trial will probably not commence, in order that they might be again subpoenaed or directed by the court to return on yet another questionable trial date setting. Forgason's efforts to secure the witnesses Beecroft and Tong may not reasonably be deemed untimely under the circumstances here presented.

Nor do we observe negligence or other shortcoming in the failure to "enforce the subpoena power of [the] court. . . ." Sheriffs' offices and law enforcement agencies, like private persons, are unable to serve proc-

ess unless advised where the intended recipient may probably be found. As said in *People* v. *Linder, supra,* 5 Cal.3d 342, 347, footnote 1, an "idle" and "pro forma" requirement "'that an officer make a pretense of looking for the witness,'" not knowing where he may be found, accomplished "'no good,'" and is manifestly unreasonable.

■ And Forgason's attorney's conclusion that expanding the search to "other agencies" such as utility companies, credit bureaus, hotels, motels, hospitals or "jails or penal institutions anywhere in California" would "be useless" seems not unreasonable. He might reasonably believe that the hotel's denizens sought as witnesses had had little contact with utility companies and credit agencies. Requests for information from welfare agencies would be summarily rejected (see Welf. & Inst. Code, § 10850), and the same is probably true of jails and penal institutions in response to information requests of private persons. And we opine that under the circumstances here, a reasonable person might more readily conclude that inquiry in places the witnesses were known to habituate would be more fruitful than motels, hotels and hospitals generally, where again the requested information might, or might not, be forthcoming.

■ Moreover, it seems to us that another important consideration would be the degree of prejudice ensuing to one, or the other, of the parties from a ruling such as the trial court here was called upon to make. No legitimate complaint of prejudice would seem to attend admission of previous testimony of absent witnesses who, as here, had been thoroughly cross-examined by the People. On the other hand, its rejection, as conceded by the trial court would be "significant" and, "should there be a conviction in this case,...no doubt the error of the court would be prejudicial error and be grounds for a new trial." For in such a case Forgason would have been deprived of his only defense.

■ Nor need a private attorney, with many other concerns in preparing a criminal case for trial, be expected to spend an inordinate amount of his time in rounding up hard to find witnesses. (See *People* v. *Linder, supra,* 5 Cal.3d. 342, 348.) *Reasonable* diligence only, is required to trigger the operation of Evidence Code section 1291.

Under the foregoing authority and rationale, and the uncontroverted facts and circumstances of this case, we conclude that Forgason and his trial attorney made a "good faith effort, with reasonable diligence" *(People* v. *Rinegold, supra,* 13 Cal.App.3d 711, 719) to secure the at-

tendance of witnesses Beecroft and Tong. The trial court erred in its contrary ruling, and, since the error was patently prejudicial, Forgason's conviction will be reversed.

■ With one exception, circumstances giving rise to other of Forgason's claims of error will probably not recur at his retrial. The excepted contention is stated by him as "Barbara Forgason's purported statement to Allen Brann was improperly admitted under the spontaneous statement exception to the hearsay rule."

Immediately after her beating by Forgason, Barbara went down the hall to the hotel's "bathroom" to "clean up." She returned to her room about two minutes later. About one and a half minutes after her return "She stated Norman has always hit her, but this is the first time she got kicked."

Evidence Code section 1240 provides: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception."

Application of section 1240 is ordinarily confided to the sound discretion of the trial court. *(Showalter v. Western Pacific R.R. Co.,* 16 Cal.2d 460, 468-469 [106 P.2d 895]; *People v. Solomon,* 1 Cal.App.3d 907, 911 [82 Cal.Rptr. 215].) We observe no abuse of discretion here.

The judgment is reversed.

Newsom, J., and Grodin, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 30, 1980.