Filed 11/14/13  P. v. Crawford CA3

**NOT TO BE PUBLISHED**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C071437 |
| Plaintiff and Respondent, | (Super. Ct. No. 09F07975) |
| v. | |
| ERIN CRAWFORD, | |
| Defendant and Appellant. | |

In May 2012, a jury found defendant Erin Crawford guilty of second degree robbery, during which he personally used a gun.  The trial court sentenced him to 12 years in state prison.

Defendant's focus on appeal centers on a photographic exhibit of him, in which he appears to be holding a gun.  He contends the trial court abused its discretion under Evidence Code section 352[1] in admitting the photo into evidence, and trial counsel was ineffective for failing to argue other bases for excluding it.  We shall affirm the judgment.

---

[1] Undesignated statutory references are to the Evidence Code.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2009, the pregnant victim and her husband had returned to their home after an outing at about 9:45 p.m. They parked the car in their stall immediately in front of their apartment, and began to unload the trunk. As her husband handed her purse to the victim, two men approached them from behind. Both were masked. One of them snatched the purse from the victim with sufficient force to bruise the shoulder on which she had started to place the strap. The robber holding the purse jumped over a nearby fence. The remaining robber was unsuccessful in his first attempt to scale the fence. As the husband started to approach him, the second robber pulled up his shirt. The victim heard him tell her husband that he had a gun, but did not see one. Her husband, who did not recall either of the robbers saying anything, could see what appeared to be a "silver-looking gun" (of the type that loads from the bottom with a magazine and has a slide on the top) tucked into the second robber's waistband. The second robber pulled it out slightly, indicating that the husband should not pursue him. The armed robber then successfully jumped over the fence.

Neither the victim nor her husband could identify the robbers because of the masks. To the husband, the first robber appeared thinner and the second appeared out of shape. The purse-snatcher was about six feet tall, and the armed robber was a couple of inches shorter. The husband had been approached a couple of days earlier out of the blue by a couple of Latino neighbors when he was outside, who had engaged him in what he thought was a "suspicious" conversation. Because he saw these neighbors drive away at a high rate of speed after the robbery, he initially described the robbers as being Latino during the 911 call. (These neighbors actually were Indian, and were in fact attempting to chase down the robbers, but lost them in the darkness of a field.) However, in talking to the police later, the husband "was pretty positive" the robbers were "two Black males" because "their hands look[ed] dark." The victim also saw dark skin through the eyeholes

2

of the masks. Although she could not identify defendant in court as one of the robbers, she thought his eyes protruded in a similar fashion to one of the robbers.

The victim had run away, screaming for help while dialing 911 on her cell phone. One of the neighbors was standing outside talking on his cell phone when she caught his attention. Based on the skin color of their exposed wrists, he believed the robbers were "two Black males." Before the second robber had vaulted the fence, he removed his mask and the neighbor could see his face momentarily, and his dreadlocked hair. He was about 100 feet away. However, as he admitted to the police, it was dark and he could not get a good look.

On their return, the Indian neighbors found a cell phone at the base of the wall where the robbers had scaled it. They gave it to the police, who were talking to the neighbor who had seen the one robber's face. The neighbor looked at the cell phone's "wallpaper" and recognized it as a picture of the robber he had just seen. The neighbor later selected defendant's picture in a photo lineup that police had prepared after identifying defendant as the person owning the phone; the neighbor was 60 percent certain of the identification.

In examining the Kyocera cell phone, the police determined there had been an exchange of calls between defendant and his then-girlfriend shortly before the robbery. The girlfriend also attempted to call the phone later on the night of the robbery. There was a photo stored to the cell phone a week earlier. It showed defendant holding what appeared to be a silver gun. In the opinion of the investigating detective, this was a real gun because a replica typically has a different-colored tip, usually orange. She could not tell from the picture if it was an "airsoft" gun (one which fires air-pressured rounds).

When interviewed in October 2009, defendant asserted that he had lost the cell phone soon after buying it. At trial, defendant testified the lost phone was a different one. His girlfriend had bought the recovered cell phone for him, and had playfully seized

3

it from him on the day before the robbery. He believed it was still in her possession on the day of the robbery, when he went to dinner and a movie with his girlfriend and her family. The gun in the picture of him was a BB gun that was in his girlfriend's possession; just before taking the picture, she had pretended to threaten to kill him with it if he ever were unfaithful to her. When she saw that he took her seriously, she asked him to pose with it because she found "bad boys" arousing. She took the gun back after photographing him. Defendant never felt the need to have his former girlfriend produce the BB gun in his defense.

## DISCUSSION

Before trial, defense counsel sought to exclude the photo of defendant with the gun, asserting "No gun was ever recovered from the scene of the robbery. No gun was ever recovered from [defendant's] home or person." The prosecutor argued that the victim's husband had described what appeared to be a silver semiautomatic handgun, and defendant was holding what appeared to be a silver semiautomatic handgun in the photo. Defense counsel pointed out that the prosecution had never even established a foundation for the photo by asking the husband whether the gun in the photo looked like the one he had seen in the robbery. In admitting the photo, the trial court concluded it was highly probative because it showed defendant possessed a gun similar in attributes to the one that the husband had described. It did not find any prejudice substantially outweighing this probative value.

Defendant argues that without any evidence that it was the same gun, the photo did not have any probative value other than the impermissible inference that because he posed in the past with what appeared to be a gun, he was the robber holding a similar gun. As a result, trial counsel was ineffective for failing to move to exclude the photo on this basis pursuant to section 1101 as improper character evidence. Defendant also contends the trial court abused its discretion in balancing what he considers minimal at

best probative value against the substantial prejudice of depicting him as a person who would pose with a gun.

Other than debate general principles of relevance and prejudice, neither of the parties discuss directly relevant precedent involving the admission of evidence of a defendant's possession of weapons. As is succinctly explained in *People v. Ringegold* (1970) 13 Cal.App.3d 711, 720-721, "Where the prosecution's evidence is circumstantial, an implement by means of which it is likely that a crime was committed is admissible in evidence if it has been connected with the defendant [citations]. If the *specific* type of weapon used to commit a homicide is *not known*[,] *any weapons* found in the defendant's possession after the crime that could have been employed *are admissible. There need* [*not*] *be* [*any*] *conclusive demonstration that the weapon in defendant's possession was the murder weapon*. But if the prosecution *relies* on a *specific* weapon or type, it is error to admit evidence that other weapons were found in the defendant's possession, as this tends to show not that he committed the crime but only that he is the sort of person who carries deadly weapons (*People v. Riser* [(1956)] 47 Cal.2d 566, 576-577; [citations]). [¶] The distinctions set forth in [*Riser*] are not exclusively applicable to homicide cases [citations] and provide a useful guide for the instant case where we are not concerned directly with the admission of the weapon but testimony that the day before the assault, [the] defendant was seen with a revolver." (Some italics omitted, our italics added.) As a result, "testimony that defendant had a revolver the day before the assault . . . would tend to connect defendant with the crime" and was relevant on that basis. (*Ringegold,* at p. 721.) Similarly, in *Riser*, the defendant's possession of a holster for a gun consistent with the caliber of the unknown murder weapon was "clearly admissible" (*Riser*, *supra*, 47 Cal.2d at p. 577) because it tended to connect the defendant with the crime and was thus relevant. (1 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 2d ed. 1982) § 21.4, pp. 551-552.) Consequently, defendant is incorrect that the photo is irrelevant except on

5

the inadmissible basis of improper character evidence,[2] and trial counsel accordingly could not have been ineffective in failing to raise this inapplicable ground for exclusion. (*People v. Thompson* (2010) 49 Cal.4th 79, 122 [no duty to make futile objections]; *People v. McPeters* (1992) 2 Cal.4th 1148, 1173 [no duty to make frivolous objections].)

As for his argument regarding the trial court's application of section 352, the photo had more than minimal probative value under the above principles. Although defendant adverts to the possibility that it was not necessarily a real gun, this ultimately is beside the point. The gun displayed during the robbery also could have been a replica, but it was used to good effect in thwarting resistance from the husband. The relevance lay in defendant's possession of a similar implement, regardless of whether either of them was a real gun or not. (The use of even a replica to effect a robbery is sufficient to support a finding of personal use (*People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1437).) We also do not find that there was a high risk that the jury would decide the case based on an emotional bias against defendant unrelated to the evidence and issues (*People v. Doolin* (2009) 45 Cal.4th 390, 439) for photographing himself with a gun. Again, this is not an act illegal of itself and we are certain that there are numerous otherwise law-abiding citizens whose pride in gun ownership would be reflected through photographing themselves with their weapons. In rejecting the merits of defendant's substantive claim, we necessarily reject his further argument that admission of the photo evidence had the result of depriving him of due process.

Furthermore, this was not a case in which the guilty verdict could only be the product of the challenged photo evidence. Defendant's alibi and explanation that his cell

---

[2] Moreover, possession of weapons—not being an illegal act per se—does not even constitute evidence of a character trait excluded pursuant to section 1101 unless the prosecution is seeking to introduce it as proof of intent (1 Jefferson, Cal. Evidence Benchbook, *supra*, § 21.4, p. 548), which was not the situation in the present case.

phone was in his girlfriend's possession did not begin to account for the presence of his Kyocera cell phone beneath where the robbers scaled the wall, and the exchange of phone calls with his girlfriend just before the robbery, evidence of which was stored on that phone, along with the photo at issue. Even if the identification evidence otherwise was not the strongest, we are convinced beyond a reasonable doubt that the verdicts would not be different if the photo evidence were to be excluded.

## DISPOSITION

The judgment is affirmed.

BUTZ , J.

We concur:

NICHOLSON , Acting P. J.

HULL , J.